STATE of Delaware

v.

Jose CABRERA, Defendant.

Criminal Action Nos. IN–03–08–1214, IN–03–08–1215, IN–03–08–1216, IN–03–08–2292.

Superior Court of Delaware, New Castle County.

Submitted: Aug. 10, 2005.

Decided: Oct. 19, 2005.

Mark B. Chernev, Esquire, Deputy Attorney General, Wilmington, Delaware, attorney for State of Delaware.

Michael C. Heyden, Esquire, Wilmington, Delaware, attorney for defendant.

HERLIHY, Judge.

Defendant Jose Cabrera has moved to withdraw his guilty pleas. He pled guilty on February 12, 2004 to four counts of unlawful sexual conduct second degree. Several weeks later, and before sentencing, he moved to withdraw his pleas. The primary basis is that he claims he was sleepwalking at the time of the incidents for which he was charged and would, therefore, lack the requisite mental state to perform an intentional act.

There are no known or reported Delaware cases involving sleepwalking, or somnambulism as it is technically known, as a defense. If properly presented to and accepted by a jury it could rebut the elements of knowingly and/or intentionally. The discussion, therefore, in this opinion of this potential defense is one of first impression.

The Court is not saying Cabrera has established this defense but is only holding he has shown a fair and just reason to enable him to withdraw his pleas. His motion to withdraw his guilty pleas is, therefore, **GRANTED.**

### Facts

Cabrera, age 53, is a legal resident of the United States and a citizen of the Dominican Republic. The police arrested him on August 7, 2003. He was later indicted on fourteen charges of unlawful sexual conduct second degree.[1] The complaining witness is under 16. Counsel represented Cabrera starting no later than October 3, 2003.

Trial was set for February 12, 2004. On that date, instead of proceeding to trial Cabrera accepted the State's plea offer. Under the agreement, he agreed to pled guilty to four counts of unlawful sexual contact second degree. He signed two TIS Guilty Plea Agreement forms. One form was in Spanish, the other in English. A presentence investigation was to be completed prior to the imposition of a sentence. Cabrera speaks Spanish, his first language, and broken English. A translator was present at the time Cabrera completed the plea agreement forms and assisted during the colloquy with the Court.

The presentence investigation interview was conducted on February 17, 2004. Again, an interpreter was present. During the interview Cabrera indicated that he was sick and was receiving treatment for the condition. He described the condition as being in a sleep state during the incidents and thus was not aware of what he was doing at the time of the alleged crimes. Prior to the February 12 hearing and the February 17 interview, Cabrera says he told counsel twice about the possible defense. However, counsel did not discuss that possible defense with Cabrera.

Cabrera filed his motion to withdraw his guilty plea on March 11, 2004. The Court appointed substitute counsel to represent Cabrera on April 4, 2004. After several office conferences and delays, new counsel delivered a report on the possible sleepwalking, somnambulism [2], defense on June 3, 2005. The report is from Dr. Pedro M. Ferreira, a psychologist. A pertinent portion of the report states:

---

1. 11 *Del.C.* § 768 states:
 A person is guilty of unlawful sexual contact in the second degree when the person intentionally has sexual contact with another person who is less than 16 years of age or causes the victim to have sexual contact with the person or a third person.

2. Other terms used to describe the sleepwalking state are somnambulism and parasomnia. The term automatism includes sleepwalking as well as other states of unconsciousness. *Black's Law Dictionary* 134 (6th ed.1990).

The possibility of some form of somnambulism (parasomnia) as a central phenomenon in this case appears plausible, especially if your client has had a prior history of said condition. Somnambulism occurs in the latter stages of sleep, but not in the Rapid Eye Movement (REM sleep), there are copious example in the clinical literature concerning this phenomenon. It is also more prevalent in males than in females. The time framework presented by your client, about three hours or so, is in line with clinically known parameters for this type of phenomenon.

\* \* \*

In summary, the narratives presented to me, particularly by your client, lend sufficient credibility to the defense strategy being considered. Specific cultural elements need to be noted also, along with the perspective of young Ms. Cabrera. Furthermore, I could not find any evidence of intentional efforts on the part of Mr. Cabrera to abuse his daughter or any other female who was at the family home on the date in question. There is not history, no sense of instability in the marriage, no psychological crisis (chronic or emerging) at the time noted with the exception of the admonitions concerning Ms. Cabrera's peer group, as described to me by your client.[3]

### Cabrera's Claims

Three bases exist to Cabrera's contention that the Court should permit him to withdraw his guilty plea. First, he contends that he did not knowingly plead guilty as he did not intend to commit the offenses. Next, he asserts that he did not knowingly plead guilty as he was not aware that somnambulism is a possible defense to the charges entered against him. Lastly, Cabrera claims that he received ineffective assistance of counsel as counsel was aware of his somnambulism but did not pursue that defense.

### Standard

■ Superior Court Criminal Rule 32(d) governs a motion to withdraw a guilty plea prior to sentencing, rather than the more stringent Rule 61 standard.[4] Under Rule 32(d), the Court may permit the withdrawal of a guilty plea prior to sentencing when the defendant shows any fair and just reason for the granting of the motion. Cabrera bears the burden to articulate to the Court that there is fair and just reason for the withdrawal of the guilty plea.[5] Superior Court Criminal Rule 11 governs the Court's discretion to permit the withdrawal of the guilty plea.[6]

### Discussion

■ The question before the Court is whether Cabrera has made a showing of any fair and just reason to permit the withdrawal of Cabrera's plea. In answering that question, the Court will consider and address five factors:

1) Was there a procedural defect in taking the plea;

---

**3.** Dr. Ferreira 6/3/05 report, p. 3.

**4.** Superior Court Criminal Rule 32(d) states:
If a motion for withdrawal of a plea of guilty or nolo contendere is made before imposition or suspension of sentence or disposition without entry of a judge of conviction, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason. At any later time, a plea may be set aside only by Motion under Rule 61.

**5.** *Brown v. State,* 250 A.2d 503, 504 (Del. 1969).

**6.** *Wells v. State,* 396 A.2d 161, 162 (Del.1978).

2) Did [Cabrera] knowingly and voluntarily consent to the plea agreement;

3) Does [Cabrera] presently have a basis to assert legal innocence;

4) Did [Cabrera] have adequate legal counsel throughout the proceedings; and

5) Does granting the motion prejudice the State or unduly inconvenience the Court.[7]

The factors provide a useful framework to determine whether a fair and just reason is shown, but these factors are not to be balanced.[8] Each factor will be considered separately.

### A.

### Procedural Defect

■ Upon careful review of the record, the Court is assured that the Superior Court Criminal Rule 11 *procedural* requirements were met. No defects appear in the record as it presently exists. The Court discussed, in open court, the plea and its ramifications with Cabrera as required by Rule 11(c). It ascertained the voluntariness of the plea and the accuracy of the guilty plea. The record also included a completed and executed plea agreement and TIS Guilty Plea form indicating a waiver of rights, both in Spanish and English. After reviewing the Truth–in–Sentencing guilty plea form which Cabrera signed, the Court has determined that the guilty plea form correctly sets forth the potential maximum statutory penalty the crime charged (8 years for four counts).

As a result, the Court finds no procedural defects surrounding the plea.

### B.

### Knowing and Voluntary Consent

Cabrera claims that his entry of the guilty plea was not knowing as he is not guilty and did not know of a possible defense. On his Truth–in–Sentencing form, Cabrera indicated that he freely and voluntarily decided to plead guilty. He also indicated that he understood that, by signing the form, he waived his right to be presumed innocent and to present evidence in his defense. He so acknowledged during his colloquy. Cabrera signed copies of the form in English and in Spanish. He is otherwise bound by these statements and answers absent clear and convincing evidence to the contrary.[9] As the ensuing Discussion indicates, Cabrera has met that standard in this instance.

### Legal Innocence

There are two separate but interrelated sub-issues to this issue of legal innocence since it revolves around the defense now being argued. The first is whether somnambulism is a valid defense under Delaware law. The other is whether, in this case, has Cabrera, through Dr. Ferreira's report, met the threshold requirement for either legal innocence to enable the plea to be withdrawn or for ultimately admissibility at trial?

Whether somnambulism is a valid defense under Delaware law appears to be one of first impression.[10] The State con-

---

7. *State v. Friend,* 1994 WL 234120 (Del.Super.), at *2.

8. *Patterson v. State,* 684 A.2d 1234, 1238 (Del. 1996).

9. *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997).

10. Only one Delaware decision mentions a potential sleepwalking defense, Motion for Postconviction Relief, 1997 WL 716906 (Del.Super.). However the case is not on point as the motion was procedurally barred by the time bar of Superior Court Rule 61(I)(1) and the merits of the potential defense were not discussed. There are no other

cedes as a general matter that it is. But it argues in this case that Dr. Ferreira's opinion as he expressed it does not meet either threshold, allowing Cabrera to withdraw his plea or for admissibility at trial. Primarily, the State's argument is that Dr. Ferreira only uses the word possibility of somnambulism but does not say within "reasonable medical certainty."

But the State's concession recognizing the defense of somnambulism in large part causes it to present an incorrect argument about the second sub-issue. To understand why, it is necessary to overlook the State's concession and to independently demonstrate that somnambulism can be recognized as a defense to most criminal acts.

The crime of unlawful sexual contact is defined as follows:

> A person is guilty of unlawful sexual contact in the second degree when the person intentionally has sexual contact with another person who is less than 16 years of age or causes the victim to have sexual contact with the person or a third person.[11]

Intentionally is defined by statute to mean:

(1) If the element involves the nature of the person's conduct or a result thereof, it is the person's conscious object to engage in conduct of that nature or to cause that result; and

(2) If the element involves the attendant circumstances, the person is aware of the existence of such circumstances or believes or hopes that they exist.[12]

Some states have analogized automatism to insanity while other states have classified sleepwalking as an unconscious defense.[13] Sleepwalking has been defined as "behavior performed in a state of mental unconsciousness." [14] A Texas court has reviewed somnambulism, citing other authorities as follows:

> "Not only is the power of locomotion enjoyed, as the etymology of the term signifies, but the voluntary muscles are capable of executing motions of the most delicate kind. Thus, the somnambulist will walk securely on the edge of a precipice, saddle his horse, and ride off at a gallop; walk on stilts over a swollen torrent; practice airs on a musical instrument, in short, he may read, write, run, **149 leap, climb, and swim, as well as, and sometimes even better than when fully awake.' Ray's Med. Jr. § 495; Wharton & Stille, Taylor, and *45 Brown announce similar views; Wharton & Stille on Med. Jur. § 149 et se.; Taylor's Med. Jr., p. 176; Med. Jur. of Insanity, § 328 et. Seq.

> "Under the general head of mental unsoundness connected with sleep, Wharton & Stille group somnolentia, somnambulism, and nightmare. They define somnolentia 'to be the lapping over of a profound sleep into the domain of apparent wakefulness,' and say that it produces a state of involuntary intoxication, which for the time destroys moral agency. Med. Jur. § 151. The writings of medical and medico-legal authors contain accounts of many well-authenticated cases in which homicides have been committed while the perpetrator

known Delaware decisions mentioning, much less discussing, sleepwalking, automatism, somnambulism or parasomnia.

11. 11 *Del.C.* § 768.

12. 11 *Del.C.* § 231

13. *Minnesota v. Cox,* 2004 WL 2796190 (Minn.App.), at 3.

14. Black's Law Dictionary 134 (6th ed.1990).

was either asleep or just being aroused from sleep, and in commenting on these cases, Brown, in his Medical Jurisprudence of Insanity, uses this language (section 338): 'Indeed, there are very many cases in which the confused thoughts of awakening consciousness have led to disastrous consequences. And this is to be accounted by the fact that there is a state between sleeping and waking when the thoughts of the dreamer have as much reality as the facts he is assured of by his senses.' " *Fain v. Commonwealth,* 78 Ky., pages 186–187, 39 Am. Rep. 213.[15] As such, it does not rise to the level of mental illness or mental defect.[16] Under Delaware law, therefore, sleepwalking would not be treated as insanity.

 The Criminal Code recognizes a number of defenses. Some are designated as affirmative defenses.[17] Others are designated as defenses.[18] But under Delaware law a defense to a criminal charge, however, does not have to be confined to those listed by statute.[19]

 To put it another way, even though somnambulism (parasomnia) is not listed as a statutory defense it can, nevertheless, be a defense. Under the Criminal Code, a defendant may produce as a defense whatever tends to negate the exis-

tence of any element of the offense.[20] In this case, the somnambulism defense goes to the essential element of intentionally in the offense of unlawful sexual contact second degree. Based on this analysis, the State's concession, while welcome, is unnecessary or redundant.

But where the State's concession led it astray is that somnambulism is a *defense.* That is a crucial and dispositive distinction to the second threshold issue. As noted, the Criminal Code designates some statutory defenses as affirmative and others as defenses. Where a defendant interposes an affirmative defense, that defense must be proven by a preponderance of the evidence.[21] To meet that burden the defendant must persuade the fact finder "that the evidence makes it more likely than not that each element of the affirmative defense existed at the required time".[22] In short, a probability.

A defense, on the other hand, has no equivalent burden:

(a) When a defense declared by this Criminal Code or by another statute to be an affirmative is raised at trial, the defendant has the burden of establishing it by a preponderance of the evidence.[23]

---

**15.** *Bradley v. State,* 102 Tex.Crim. 41, 277 S.W. 147, 148–149 (App.1929).

**16.** 11 *Del.C.* § 401.

**17.** *See,* e.g. 11 *Del.C.* § 401—mental illness; § 431—duress; and 11 *Del.C.* 636—extreme emotional distress.

**18.** *See,* e.g. 11 *Del.C.* § 423—involuntary intoxication; 11 *Del.C.* § 464—use of force in self-protection.

**19.** *Hall v. State,* 431 A.2d 1258 (Del.1981) which recognized "accident" as a defense.

**20.** 11 *Del.C.* § 302(b).

**21.** 11 *Del.C.* § 304(a).

**22.** 11 *Del.C.* § 304(c). *See* subsection (b) which states:

Unless the Court determines that no reasonable juror could find an affirmative defense established by a preponderance of the evidence presented by the defendant, the defendant is entitled to a jury instruction that the jury must acquit the defendant if they find the affirmative defense established by a preponderance of the evidence.

**23.** 11 *Del.C.* § 304(a).

■ As stated, the Court has to be satisfied there is some credible evidence in order for the defense to go to the jury. This is a much lower threshold. It means, in another way, that there is a *possibility* such a defense exists. Reasonable doubt's own terms speak in terms of possibilities, not probabilities.[24]

Earlier the Court noted that, because somnambulism was a defense and not an affirmative defense, it was dispositive of the second and primary prong of the State's argument in this case. The State argues that Dr. Ferreira had to state his opinion within "reasonable medical probability." He does not have to. He has to opine is that it was possible the defendant was in a state of somnambulism at the time of the offenses. The State would be correct about the reasonable probability argument if this defense were an affirmative defense. That is why its concession led it astray.

■ The result is that Dr. Ferreira's opinion, as expressed in his letter of June 3, 2005, creates the potential of "legal innocence" to the degree that Cabrera must be allowed to withdraw his guilty pleas.

The inquiry does not stop there, however. The Court has been presented with a letter opinion from Dr. Ferreira. There is no curriculum vitae attached and nothing about him, beyond this letter. The letter is a matter of record in this case. While the Court finds his letter is sufficient to establish "legal innocence" to enable Cabrera to withdraw his guilty pleas, the Court will not presume the State will concede, for trial purposes, Dr. Ferreira's qualifications or the basis for his opinion.

That opinion, of course, is an expert opinion. The decision to admit expert testimony at trial is within this Court's discretion.[25] Up until now, the Court has assumed for purposes of the "legal innocence" analysis that Dr. Ferreira's opinion would be admissible at trial.

■ The opinion is clearly one outside normal experience and knowledge of lay people.[26] As such, it falls within the evidentiary rules on experts and expert opinions.[27] This Court acts as a gatekeeper to ensure all expert testimony on a scientific, technical, and other special topics is relevant and reliable.[28] The Court has already determined Dr. Ferreira's opinion is relevant.[29]

■ There are a series of tests or standards implicated when expert testimony is proffered: is the opinion based on sufficient facts, is it the product of reliable principles and methods, and have the principles and methods been applied reliability to the facts in this case.[30] There is a five factor test to be applied in the determina-

24. Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. Therefore, based upon your conscientious consideration of the evidence, if you are firmly convinced that the defendant is guilty of the crime charged, you should find the defendant guilty. If, on the other hand, you think there is a real possibility or, in other words, a reasonable doubt, that the defendant is not guilty, you must give the defendant the benefit of that doubt by finding the defendant not guilty.

25. *Moorhead v. State*, 638 A.2d 52, 56 (Del. 1994).

26. *Floray v. State*, 720 A.2d 1132, 1135 (Del. 1998).

27. D.R.E. 702, 703.

28. *Flamer v. State*, 585 A.2d 736, 754 (Del. 1990).

29. *See also, State v. Magner*, 732 A.2d 234 (Del.Super.1997).

30. D.R.E 702; *Ward v. Shoney's, Inc.*, 817 A.2d 799, 802 (Del.2003).

tion of whether expert testimony is to be admitted at trial:

1) That the expert witness be qualified;
2) That the evidence offered was otherwise admissible, relevant and reliable;
3) That the basis for the opinion are those "reasonably relied upon by the experts in the field";
4) That the specialized knowledge being offered will assist the trier of fact to under the evidence or determine a fact in issue; and
5) Whether such evidence would create unfair prejudice, confuse the issues or mislead the jury.[31]

■ As gatekeeper, the Court has broad latitude to determine whether the *Daubert*[32] factors are or are not reasonable measures of reliability in a case.[33] These factors, however, are merely meant to be helpful as they do not constitute a "definite checklist or test" but are "tied to the facts" of a particular "case."[34] The *Daubert* test is whether any particular opinion is based on valid reasoning and reliable methodology, not whether the expert opinion has the best foundation.[35]

Dr. Ferreira would appear qualified because of his knowledge, experience, training and education. The proffered testimony concerns evidence that potentially negates an element of the offense. His letter indicates he consulted another expert as well as available sources which tends to indicate that the basis for his opinion are reasonably relied upon by experts in the field. Knowledge about

sleepwalking will enable the finder of fact to understand Cabrera's defense of sleepwalking and to determine whether or not he was sleepwalking at the time of the offenses. There is no indication that the testimony would create unfair prejudice, confuse the issue or mislead the finder of fact, the jury

Considering, however, that the defense of somnambulism is recognized in this opinion for the time as defense to many criminal offenses, the Court, if the State desires, will allow it to take the pre-trial deposition of Dr. Ferreira.[36] If it does depose him and in good faith believes there is an evidentiary basis to challenge either Dr. Ferreira or his opinion (but not on "reasonable certainty"), it can file a motion to exclude. His qualifications and the basis of his opinion are issues to be decided pre-trial. The State may, of course, choose not to depose Dr. Ferreira. That step will operate in this case as a presumption of a waiver of any challenge to his qualifications or basis for his opinion other than any reliance on what Cabrera told him. If it chooses to depose him, arrangements are to made to have the deposition within 45 days of today's opinion.

***Summary***

The defense of somnambulism goes to whether Cabrera intentionally committed the offenses charged. A jury is not required to accept this explanation, but he should be able to make it to the jury. Credibility and weight of the expert testi-

---

31. *Nelson v. State,* 628 A.2d 69, 74 (Del.1993).

32. *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

33. *M.G. Bancorporation, Inc. v. Le Beau,* 737 A.2d 513, 521 (Del.1999).

34. *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 149, 119 S.Ct. 1167, 1175, 143 L.Ed.2d 238 (1999), *quoting Daubert,* 509 U.S. at 593, 113 S.Ct. at 2796, 125 L.Ed.2d 469 (1993).

35. *Pfizer v. Advanced Monobloc Corp.,* 1999 WL 743927 (Del.Super.), at *3.

36. Superior Court Criminal Rule 15.

mony is to be determined by a jury where there is a logical basis for that testimony.[37] Therefore, the Court finds that there is a fair and just reason to permit Cabrera to withdraw his guilty plea.

The Court finds that the *Daubert* factors are a reasonable measure of reliability and are tied to the facts currently before the Court. Cabrera can present his sleep-walking defense at trial. However, the Court is not ruling that Cabrera actually was sleepwalking at the time of the offenses charged. He can call competent expert witnesses and otherwise present evidence of this defense at trial. The State may call its own experts and challenge any evidence and/or witnesses presented by Cabrera. It is for the jury to accept or reject this defense.

### *Conclusion*

For the reasons stated herein, the motion of Jose Cabrera to withdraw his guilty pleas is **GRANTED.** The matter is to be set for trial.

---

**37.** *Hart v. Resort Investigations & Patrol,* 2004 WL 2050511 (Del.Super.), at *4.