Colorado Court of Appeals Opinions || February 11, 2016

Colorado Court of Appeals -- February 11, 2016
2016 COA 15. No. 13CA1850. People v. Johnson.

 
 
 
 COLORADO COURT OF APPEALS

 
 2016 COA 15

 
 

 
  
 
 Court of Appeals No. 13CA1850
 Adams County District Court No. 12CR1682
 Honorable Thomas R. Ensor, Judge 
 
 
  
 
 The People of the State of Colorado, 
 
 Plaintiff-Appellee,
 
 v.
 
 William Edward Johnson, 
 
 Defendant-Appellant.
 
 
  
 
 JUDGMENT AFFIRMED IN PART, VACATED IN PART,
 AND CASE REMANDED WITH DIRECTIONS
 
 Division I
 Opinion by JUDGE HARRIS
 Taubman, J., concurs
 J. Jones, J., specially concurs
 
 Announced February 11, 2016
 
 
  
 
 Cynthia H. Coffman, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee
 
 Lauretta A. Martin Neff, Alternate Defense Counsel, Bayfield, Colorado, for Defendant-Appellant

 
 ¶1         William Edward Johnson was convicted of various offenses related to the sexual assault of his stepdaughter. On appeal, he contends that there was insufficient evidence to support an enhancement for committing a pattern of sexual abuse. He also argues that the trial court erred in denying his request for substitute counsel and in giving the jury unfettered access to recorded testimonial evidence.
 
 ¶2         We agree with Mr. Johnson’s first contention and vacate his conviction for sexual assault as a pattern of sexual abuse. But we reject his other contentions and affirm his remaining convictions.
 
 I. Background
 
 ¶3         Mr. Johnson was arrested after a domestic disturbance. Shortly after his arrest, his stepdaughter, R.B., reported that Mr. Johnson had anally raped her earlier that day, and that he had been sexually abusing her for many years. Mr. Johnson was subsequently charged with sexual assault on a child by one in a position of trust, aggravated incest, two counts of sexual assault on a child (one of which was dismissed before trial), and a sentence enhancer for committing sexual assault as a pattern of sexual abuse.

 
 ¶4         R.B. and Mr. Johnson were separately interviewed by the same detective. R.B. recited numerous instances of inappropriate touching and attempted penetration, including an allegation that Mr. Johnson had rubbed his penis against her while she was sleeping in bed with him and her mother.
 
 ¶5         During his interview, Mr. Johnson was confronted with, and denied, all of R.B.’s allegations. He told the detective that R.B. was overly-curious about sex and had exhibited sexual behavior problems for a number of years, which Mr. Johnson attributed to R.B.’s early exposure to sexually explicit materials by a cousin. Mr. Johnson explained that, after an incident in which R.B. had come into the bedroom while he and her mother were having sex, R.B. would frequently climb on top of Mr. Johnson and “grind” her hips against him until he pushed her off. Mr. Johnson described an incident in which he was asleep, R.B. was grinding on him, and he woke up while he was ejaculating.

 
 ¶6         At trial, the prosecution presented the recorded interviews and also called R.B. as a witness. R.B. did not describe any incident involving grinding in either her testimony or the forensic interview.
 
 ¶7         The verdict form for the pattern of sexual abuse sentence enhancer included a special interrogatory listing alleged incidents of sexual abuse. If the jury found that Mr. Johnson had committed at least two of the enumerated incidents of abuse, it could convict him of the sentence enhancer. During its deliberations, the jury sent a question to the court asking if it could rely on an incident not listed in the special interrogatory. The court replied that it could and instructed the jury to write the unlisted incident on the verdict form.
 
 ¶8         The jury convicted Mr. Johnson of the pattern of abuse  sentence enhancer, finding that he committed the anal rape, but none of the other listed incidents. For the required second incident, the jury wrote in: “The incident where the defendant admitted in his audio interview with [the detective] that he ejaculated while [R.B.] was sitting on top of him grinding.” The jury convicted Mr. Johnson on all other counts.

 
 ¶9         At sentencing, the trial court merged all of the other convictions into the conviction for sexual assault on a child as a pattern of sexual abuse and sentenced Mr. Johnson to twenty years to life in prison.
 
 II. Insufficient Evidence
 
 ¶10         Mr. Johnson contends that there was insufficient evidence to convict him of the pattern of sexual abuse sentence enhancer, and that his conviction on this count should be vacated. We agree.
 
 ¶11         To be convicted of the pattern of sexual abuse sentence enhancer, in addition to the predicate offense of sexual assault on a child, “the jury must find beyond a reasonable doubt that the defendant completed at least two distinct incidents of sexual contact on the same child victim.” People v. Day, 230 P.3d 1194, 1197 (Colo. 2010); see § 18-3-401(2.5), C.R.S. 2015. The legislature has defined “sexual contact” as 
 
 the knowing touching of the victim’s intimate parts by the actor, or of the actor’s intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victim’s or actor’s intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.
 
 § 18-3-401(4).

 
 ¶12         The jury must unanimously determine the incidents on which it bases its pattern of sexual abuse verdict. People v. Melillo, 25 P.3d 769, 779 (Colo. 2001). Courts often rely on special interrogatories to ensure unanimity. See, e.g., Sanchez v. People, 2014 CO 29, ¶7.
 
 ¶13         When the jury returned its verdict, it found Mr. Johnson guilty of the pattern of sexual abuse sentence enhancer based on two incidents — one that was listed in the special interrogatory, and one that the jury wrote in. By not checking the other boxes on the special interrogatory, the jury explicitly rejected R.B.’s six other allegations of sexual abuse. Mr. Johnson challenges only the sufficiency of the evidence for the unlisted incident.
 
 ¶14         He first contends that the court erred in allowing the jury to identify an incident of sexual abuse not listed in the special interrogatory. He argues that the jury was bound to the specifically identified incidents, and since it only found him guilty of one identified incident, there was insufficient evidence to support his conviction of a pattern of sexual abuse. We disagree.

 
 ¶15          The prosecution need not elect specific incidents of sexual contact to convict a defendant of the pattern of sexual abuse sentence enhancer. Melillo, 25 P.3d at 778. The trial court need only instruct the jurors that “they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim.” Thomas v. People, 803 P.2d 144, 154 (Colo. 1990). Because the court provided the required instruction, it did not err in allowing the jury to identify an incident of sexual contact other than those listed on the special interrogatory.[1]

 
 ¶16         Mr. Johnson next contends that even if the jury could rely on the unlisted incident, there was insufficient evidence to support his conviction of a pattern of sexual abuse. We review the record de novo to determine if the evidence was sufficient to support a conviction. Dempsey v. People, 117 P.3d 800, 807 (Colo. 2005). In reviewing the sufficiency of the evidence, we determine whether the evidence, viewed as a whole and in the light most favorable to the prosecution, is both “substantial and sufficient” to support the defendant’s guilt beyond a reasonable doubt. Id. In applying this test, we “must give the prosecution the benefit of every reasonable inference, which might be fairly drawn from the evidence.” People v. Sprouse, 983 P.2d 771, 778 (Colo. 1999). However, a mere modicum of relevant evidence will not rationally support a conviction beyond a reasonable doubt, and a verdict “may not be based on guessing, speculation, or conjecture.” Id.
 
 ¶17         The only evidence supporting this incident of sexual contact was Mr. Johnson’s audiotaped interview with the detective. During the interview, the detective asked Mr. Johnson about allegations that R.B. came into Mr. Johnson’s bed and made him ejaculate by “grinding” on him. Mr. Johnson then described an incident in which: (1) he was sleeping; (2) while he was sleeping, R.B. sat on top of him; (3) R.B. began grinding on him; (4) when he woke up, he immediately pushed her off; (5) but he was already ejaculating. Mr. Johnson was unequivocal that R.B. initiated the contact while he was asleep and, once he woke up, he immediately ended the contact.

 
 ¶18         Under Colorado law, “[t]he minimum requirement for the imposition of criminal liability is that the criminal act be performed voluntarily or consciously.” People v. Marcy, 628 P.2d 69, 73 (Colo. 1981) (emphasis added); see also § 18-1-502, C.R.S. 2015. Therefore, a person cannot have unlawful sexual contact while he or she is asleep and unaware of the contact. See Whatley v. State, 445 S.W.3d 159, 167 (Tex. Crim. App. 2014) (the defendant could not be found guilty of sexual assault on a child if he was asleep during the alleged assault because the conduct would not have been voluntary); State v. Bush, 595 S.E.2d 715, 722 (N.C. Ct. App. 2004) (unconsciousness is a complete defense because it “excludes the possibility of a voluntary act without which there can be no criminal liability”); cf. State v. Cabrera, 891 A.2d 1066, 1072 (Del. Super. Ct. 2005) (sleepwalking is a defense to the crime of unlawful sexual contact). Thus, according to Mr. Johnson’s interview, because he was asleep and could not have voluntarily or consciously touched R.B., he did not have unlawful sexual contact with her.

 
 ¶19         The People contend that this is merely Mr. Johnson’s side of the story, and that the jury was free to reject this testimony in favor of R.B.’s. However, R.B. never testified, either in court or in her recorded interview, to any similar incident. Thus, this particular story did not have two sides.
 
 ¶20         The People suggest that in identifying the second incident of sexual contact, the jury credited R.B.’s testimony that Mr. Johnson would “rub his thing against” her while they were lying in bed. In R.B.’s forensic interview, she described occasions when: (1) she was asleep; (2) Mr. Johnson would rub his penis against her buttocks and/or anus or pubes and/or genitalia; (3) and he would sometimes attempt penetration; but (4) he would stop when he became aware that R.B. was awake. The only commonality between R.B.’s testimony and the incident specifically referenced by the jury is that something happened in bed. Aside from the location, there are no parallels between Mr. Johnson’s and R.B.’s descriptions. In the incidents recounted by R.B., she was neither sitting on top of Mr. Johnson nor “grinding” on him. And there is no mention of ejaculation. But the jury specifically referenced the conduct Mr. Johnson “admitted” — that “he ejaculated while [R.B.] was sitting on top of him grinding.” There is simply no connection between the allegations that Mr. Johnson would inappropriately “rub” R.B. while lying in bed and the incident that the jury described, based on Mr. Johnson’s admission, as R.B. “sitting on top of [Mr. Johnson] grinding.”

 
 ¶21         Thus, the issue is not, as the People argue, that the jury simply credited R.B.’s side of the story over Mr. Johnson’s. Of course, under those circumstances, the resolution of inconsistent testimony and the determination of credibility are solely within the province of the jury. People v. Duncan, 109 P.3d 1044, 1046 (Colo. App. 2004). But here, R.B. and Mr. Johnson did not offer inconsistent testimony about the same incident — they described separate incidents. As to the incident written on the jury’s special interrogatory, only Mr. Johnson’s account was presented to the jury because R.B. did not have an account of that incident. The issue, then, is whether Mr. Johnson’s statement to the detective provided sufficient evidence of sexual contact. We conclude that it did not.

 
 ¶22         To be sure, a jury is free to accept parts of a witness’s testimony and reject others. People v. Mendoza-Balderama, 981 P.2d 150, 157-58 (Colo. 1999). But rejecting a witness’s testimony cannot substitute for evidence. The only evidence presented about this incident was that Mr. Johnson was asleep. While the jury was free not to believe this, it could not, without any other evidence, decide beyond a reasonable doubt that he was awake and aware. See People v. Duran, 272 P.3d 1084, 1091 (Colo. App. 2011) (evidence was insufficient to support conviction where testimony did not support the prosecution’s theory, no one contradicted the testimony, and there was no direct or circumstantial evidence or any reasonable inference therefrom to support the conviction); see also Stallings v. Tansy, 28 F.3d 1018, 1024 (10th Cir. 1994) (“The jury’s disbelief of petitioner’s testimony could not fill the gap left by the State’s total lack of relevant evidence . . . .”). There was no evidence that Mr. Johnson was awake during this incident. Any conclusion that he was awake would be purely “based on guessing, speculation, or conjecture.” Sprouse, 983 P.2d at 778.

 
 ¶23         Because there is no evidence that Mr. Johnson was awake during this incident, he could not have knowingly touched R.B. and could not have had sexual contact with her. Therefore, only one of the two incidents of sexual contact found by the jury was supported by sufficient evidence. And since the pattern of sexual abuse sentence enhancer requires a finding of at least two distinct incidents of sexual contact, there was insufficient evidence to support this conviction. Therefore, we vacate the conviction of the pattern of sexual abuse sentence enhancer and remand for resentencing.
 
 ¶24         The People contend that a remand for resentencing is unnecessary under People v. Torrez, 2013 COA 37, ¶¶89-92, because the trial court indicated that it would have entered the same sentence on the other counts on which Mr. Johnson was convicted if they had not merged with the pattern of sexual abuse conviction. Torrez, however, is inapposite. In Torrez, the issue on appeal was the legality of the sentence, not the conviction. And that case “present[ed] unusual circumstances” not present here that justified the decision not to remand. Id. at ¶89.

 
 ¶25         The People further contend that even if the case is remanded, Mr. Johnson could fare even worse after resentencing because his other convictions would no longer merge, rendering his appeal moot. An appeal is not moot if an appellate court can grant some relief. People v. Chipman, 2015 COA 142, ¶39. We have determined that Mr. Johnson was unlawfully convicted of a sentence enhancer, that the conviction must be vacated, and that he must be resentenced. On remand, the trial court is not required to impose the same sentence. In multicount cases, judges typically craft sentences on the various counts as part of an overall sentencing scheme, but when a count is vacated and that scheme unravels, they should have the discretion to reevaluate the underlying facts and sentences on the remaining counts. See People v. Johnson, 2015 CO 70, ¶26. Moreover, we note that the court gave no indication that it would have imposed the same sentence regardless of whether Mr. Johnson had been convicted of a pattern of sexual abuse. Accordingly, the appeal is not moot.

 
 ¶26         We therefore vacate Mr. Johnson’s conviction of pattern of sexual abuse and remand to the trial court for resentencing on the convictions of sexual assault on a child by one in a position of trust, aggravated incest, and sexual assault on a child.
 
 III. Substitute Counsel
 
 ¶27         Mr. Johnson contends that the trial court erred in denying his request for substitute counsel in violation of his Sixth Amendment right to counsel. We disagree.
 
 ¶28         More than six months before trial, Mr. Johnson filed a motion for substitute counsel.[2] At a hearing shortly thereafter, Mr. Johnson explained to the court that he was dissatisfied with the level of communication with his appointed counsel because she had not yet visited him in prison and he had not seen much of the discovery. He also noted that she had given him incorrect legal advice in an unrelated case. The court denied the request, explaining that defense counsel’s failure to visit Mr. Johnson did not indicate that she was being ineffective. The court further noted it had previously observed defense counsel, and she had always provided effective assistance. Mr. Johnson never renewed his request for substitute counsel, and he remained represented by his appointed counsel through the remainder of the case.

 
 ¶29         We review the trial court’s denial of an indigent defendant’s request for substitute counsel for an abuse of discretion. People v. Garcia, 64 P.3d 857, 863 (Colo. App. 2002). A trial court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law. People v. Casias, 2012 COA 117, ¶17. While the People contend that if the court abused its discretion, a remand or reversal is not required unless Mr. Johnson can prove ineffective assistance of counsel, Mr. Johnson contends that any error should be reviewed for constitutional harmless error. Because we find no error, we decline to resolve this dispute.
 
 ¶30         When an indigent defendant objects to his court-appointed counsel, the trial court must investigate the reasons for the dissatisfaction. But the court is not required to substitute counsel unless it verifies that the defendant has a well-founded reason for believing that the appointed attorney cannot or will not competently represent him. People v. Bergerud, 223 P.3d 686, 694 (Colo. 2010).
 
 ¶31         Although the Sixth Amendment guarantees a defendant’s fundamental right to counsel, this guarantees only competent representation. People v. Arguello, 772 P.2d 87, 92 (Colo. 1989). An indigent defendant is not entitled to his or her ideal attorney-client relationship, id., and the absence of such a relationship is not grounds for obtaining new counsel. Rather, to obtain substitute counsel, a defendant must demonstrate good cause, such as “a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict that may lead to an apparently unjust verdict.” People v. Kelling, 151 P.3d 650, 653 (Colo. App. 2006); see also Garcia, 64 P.3d at 863 (“If the court has a reasonable basis for concluding the attorney-client relationship has not deteriorated to the point where counsel is unable to give effective assistance, the court is justified in refusing to appoint new counsel.”).

 
 ¶32         Mr. Johnson contends that he was entitled to substitute counsel because there was “a total breakdown in communication” between him and his appointed attorney. Mere communication difficulties, however, do not demonstrate a complete breakdown in communication, especially at an early stage of the case. See People v. Thornton, 251 P.3d 1147, 1151 (Colo. App. 2010) (refusing to find a complete breakdown in communication requiring substitute counsel even though counsel admitted to “a lot of communication breakdowns” because he assured the court that he was in contact with the defendant and continued to represent his interests); cf. United States v. Lott, 310 F.3d 1231, 1249 (10th Cir. 2002) (the defendant sufficiently alleged a total breakdown in communication because counsel had never interviewed him prior to trial and he had been completely unable to contact counsel). Nor does an allegation of infrequent visits from counsel constitute such a breakdown. See People v. Jenkins, 83 P.3d 1122, 1126 (Colo. App. 2003) (complete breakdown of communication not established where counsel met with the defendant only once in nine months and had not discussed potential witnesses with him or given him copies of discovery); see also People v. Buckner, 228 P.3d 245, 249 (Colo. App. 2009) (defendant’s concern about the number of visits from his attorney did not require substitute counsel).

 
 ¶33         Moreover, Mr. Johnson’s complaint that he had not yet seen much of the discovery does not establish good cause for substitute counsel, particularly because Mr. Johnson admitted that he had seen the prosecution’s main evidence — the videotaped interview of R.B. See People v. Krueger, 2012 COA 80, ¶21.
 
 ¶34         Mr. Johnson also contends that he was entitled to new counsel because his attorney failed to pursue discovery and adequately investigate the case. His claims, however, are irrelevant, as all of the alleged failures to investigate occurred well after Mr. Johnson requested substitute counsel. If Mr. Johnson believed that this failure to investigate was grounds for substitute counsel, he should have renewed his request at that time.
 
 IV. Jury Access to Recorded Interviews
 
 ¶35         Relying on DeBella v. People, 233 P.3d 664 (Colo. 2010), Mr. Johnson contends that the court abused its discretion in allowing the jury “unfettered access” during its deliberations to R.B.’s videotaped interview.[3] We discern no error.

 
 ¶36          A district court overseeing criminal proceedings has an obligation “to assure that juries are not permitted to use exhibits in a manner that is unfairly prejudicial to a party.” Frasco v. People, 165 P.3d 701, 704 (Colo. 2007). But we leave to the trial court’s sound discretion the issue of whether and how to limit the use of exhibits to achieve this result. The court’s decision will not be disturbed unless it is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous understanding or application of the law. People v. Smalley, 2015 COA 140, ¶59.
 
 ¶37         In DeBella, the supreme court concluded that the trial court abused its discretion by leaving a TV monitor and the victim’s videotaped interview with the jury and failing to supervise its use by the jury. The problem, the supreme court explained, was that the trial court thought it lacked authority to limit the jury’s access to the videotape and therefore failed to exercise its discretion in determining whether, and under what circumstances, to allow the jury to access the exhibit. 223 P.3d at 667, 668.

 
 ¶38         Mr. Johnson contends that the same error occurred here — the district court failed to exercise its discretion and, as a result, the jury had unfettered access to R.B.’s interview. We disagree.
 
 ¶39         Unlike the trial court in DeBella, the district court here understood its authority, and obligation, to consider whether imposition of certain restrictions on the jury’s access to the video was necessary to guard against undue prejudice. And, indeed, the district court chose to exercise its discretion to impose certain restrictions: after hearing from both parties, the court ordered that the jury could access the videotape only upon a request to the bailiff (it is not clear whether the bailiff would also supervise the jury’s viewing of the video) and, if such request were made, the jury was required to watch the video all the way through, to avoid emphasis on any one portion of the interview. Mr. Johnson, we should note, did not request any additional restrictions.

 
 ¶40         We cannot say that the trial court abused its discretion in allowing the jury access under these conditions. See Frasco, 165 P.3d at 705 (trial court did not abuse its discretion in limiting jury’s access to videotape by requiring jury to request video and providing limiting instruction).
 
 ¶41         Our conclusion that the district court properly exercised its discretion disposes of the controversy between the parties regarding whether the jurors actually viewed the videotape. Mr. Johnson’s claim is that the court erred by failing to exercise its discretion in placing limitations on the jury’s access to the videotape. We have determined that it did not err, which renders the question of whether the tape was actually viewed irrelevant.
 
 V. Conclusion
 
 ¶42         We vacate Mr. Johnson’s conviction of the pattern of sexual abuse sentence enhancer, and we affirm his convictions of sexual assault on a child by one in a position of trust, aggravated incest, and sexual assault on a child. We remand for resentencing on these counts.

 [1] While the People contend that the difference between the special interrogatory and the incident identified by the jury is a simple variance, which would not require reversal, we find no variance at all. A variance describes a difference between “the offense in the charging instrument and the offense of which a defendant is convicted.” People v. Huynh, 98 P.3d 907, 911 (Colo. App. 2004). Mr. Johnson’s charging document did not allege the specific incidents of sexual contact supporting the charged sentence enhancer. Thus, the unlisted incident of sexual contact does not “vary” from the charging document — it is just a detailed description of an incident that fits within that charge. See People v. Melillo, 25 P.3d 769, 779 (Colo. 2001) (information sufficiently charged the pattern of sexual abuse sentence enhancer where it tracked the statutory elements and cited to the statute, even though it did not allege any specific incidents of abuse).

 [2] Although styled as an ineffective assistance of counsel claim, Mr. Johnson’s motion requested that new counsel be appointed, and the district court treated the motion as a request for substitute counsel.

 [3] Mr. Johnson also argues that the district court erred in giving the jury unsupervised access to his own taped interview. Divisions of this court, however, have held that the jury may have unrestricted access to the defendant’s statement. See, e.g., People v. Carter, 2015 COA 36, ¶¶56-57 (defendant’s own recorded statement may be provided to jury without limitations) (cert. granted Jan. 25, 2016); People v. Gingles, 2014 COA 163, ¶14-19 (no restrictions on jury’s access to defendant’s confession). Thus, even if the jury had “unfettered access” to Mr. Johnson’s interview, the court did not abuse its discretion.

  

  

  

 
 JUDGE TAUBMAN concurs.
 
 JUDGE J. JONES specially concurs.

 
 JUDGE J. JONES, specially concurring.
 
 ¶43         I concur in the majority’s opinion but write separately to explain why I believe defendant’s conviction on the pattern count cannot stand.
 
 ¶44         The conviction on the pattern count stands or falls on defendant’s testimony about the “sleeping” incident. Unless that testimony alone established commission of a sexual assault, there is no basis for the jury’s finding of a pattern because, as the majority points out, there is no other evidence relating to that incident.
 
 ¶45         In People v. LaRosa, 2013 CO 2, the supreme court held that the commission of a crime can be based solely on a defendant’s confession if the confession is “trustworthy.” Trustworthiness may be shown by evidence independent of the confession (1) corroborating facts contained in the confession; (2) corroborating the commission of the crime that corroborates facts contained in the confession; or (3) showing that the circumstances under which the defendant made the confession render the confession trustworthy or reliable. Id. at ¶41.

 
 ¶46         I agree with the majority that there is no independent evidence that would satisfy either of the first two alternatives. And though it may be that the circumstances of defendant’s testimony render it reliable, the problem with relying on defendant’s testimony is that it does not amount to a confession of a crime.
 
 ¶47         The People try to get around this problem by arguing that the jury could have believed all of defendant’s testimony except the part where he said he was asleep. It is true that a jury is free to believe only part of a witness’s testimony. See People v. Mendoza-Balderama, 981 P.2d 150, 157-58 (Colo. 1999). But where, as here, that disbelief necessarily would be based entirely on demeanor, there must be some corroborating evidence of the resulting missing piece of the criminal offense puzzle. See Stallings v. Tansy, 28 F.3d 1018, 1024 (10th Cir. 1994).
 
 ¶48         In short, for a criminal conviction to be based entirely on a defendant’s statements, those statements must amount to a confession of a crime. It is not enough that the statements would establish some, but not all, elements of an offense. Therefore, defendant is entitled to a judgment of acquittal on the pattern charge.

These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 

Colorado Court of Appeals Opinions || February 11, 2016

Back