24CA0319 Peo v Garcia 08-14-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0319
City and County of Denver District Court No. 22CR409
Honorable Jay S. Grant, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Justin A. Garcia,

Defendant-Appellant.

---

SENTENCE AFFIRMED

Division VII
Opinion by JUDGE LIPINSKY
Pawar and Lum, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 14, 2025

---

Philip J. Weiser, Attorney General, Allison S. Block, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Reclamation Law, LLC, Erin Hunn, Denver, Colorado, for Defendant-Appellant

¶ 1     Justin A. Garcia appeals the sentence the district court imposed after he pleaded guilty to child abuse and assault. He contends that the court erred by (1) denying his request for a presentencing hearing under *People v. Bergerud*, 223 P.3d 686 (Colo. 2010); and (2) when sentencing him, considering factors not contemplated in the sentencing statute. We affirm.

## I.     Background

¶ 2     The prosecution charged Garcia with twenty-three counts based on allegations that he sexually assaulted his adolescent daughters for more than two years. In exchange for dismissal of the original charges, Garcia pleaded guilty to one count of child abuse resulting in serious bodily injury and one count of second degree assault, with a sexual factual basis for each count. As part of the plea agreement, Garcia stipulated to a ten- to twenty-four-year sentence in the custody of the Department of Corrections (plus mandatory parole) and a consecutive ten-year term of sex offender intensive supervised probation (SOISP). He also agreed to register as a sex offender.

¶ 3     At his providency hearing, the court accepted Garcia's plea and found that he entered it knowingly, intelligently, and voluntarily.  The court then set a sentencing hearing.

¶ 4     Approximately a week and a half before that hearing, Garcia wrote a letter to the court saying,

> I am writting [sic] you to express my concern about my Public Defenders . . . .  I believe that I am being deprived of my rite [sic] to effective assistance of counsel and am requesting a Burger [sic] Hearing for the following reasons.
>
> - Breakdown in communication, neither [public defenders] have come to visit me since the [providency hearing] except to sit in on the [offense-specific evaluation (OSE)] and [presentencing investigation (PSI)] Interview.
>
> - I lost all confidence in [public defenders]. Sentencing is less then [sic] two weeks away and we have formed no sentence mitigation strategy.
>
> - [Public defenders] withheld evidence in my case, victims written recantation.

¶ 5     The court subsequently postponed the sentencing hearing for one month "per agreement of all parties."

¶ 6     At the sentencing hearing, the court acknowledged Garcia's letter but said that he should present the allegations in his letter through a Crim. P. 35(c) motion following sentencing:

> THE COURT: Mr. Garcia did file a motion addressing some dissatisfaction or grievances with his counsel.  My thought is — My initial thought is that we continue to sentencing and then he can pursue a 35(c).  So a 35(c) would be that you'd be asserting ineffective assistance of counsel, Mr. Garcia.
>
> GARCIA: Okay.
>
> THE COURT: And we'll appoint alternative defense counsel to do that, but I think we can proceed though to sentencing. . . .
>
> DEFENSE COUNSEL: I — I agree with that I guess.  We are asking to continue sentencing.
>
> THE COURT: Okay.

¶ 7     The court deferred sentencing Garcia again and set a new date for the sentencing hearing.  In the meantime, the court issued a written order stating that it would appoint postconviction counsel for Garcia and asking the Office of the Public Defender to identify any conflicts of interest it might have in representing Garcia in connection with a postconviction motion.  Garcia's public defenders responded that they would have a conflict in doing so and requested appointment of conflict-free postconviction counsel for Garcia.

¶ 8     The court sentenced Garcia to twenty-four years in the custody of the Department of Corrections (the maximum possible sentence specified in the plea agreement) and ten years of SOISP. The court found that Garcia's alleged conduct was "outrageous" and characterized the stipulated sentence in the plea agreement as "gracious."  The court then said,

> [T]he most important thing for me to do is fashion a sentence where when Mr. Garcia gets out of . . . prison, that [the victims] are well into their adult lives and that they're able to take care of themselves.  So I think twenty-four years is an appropriate sentence here. They'll be . . . women of age that hopefully they'll have . . . gotten through the trauma and will be able to take care of themselves, so I think that's the most important thing here.

¶ 9     On appeal, Garcia contends that the court erred by (1) characterizing his letter as a Crim. P. 35(c) petition rather than as a request for a *Bergerud* hearing and not conducting such a hearing, and (2) considering his daughters' ages in fashioning Garcia's sentence.

## II.    Request for a *Bergerud* Hearing

¶ 10    Garcia first contends that the court erred by proceeding to sentencing without first holding a *Bergerud* hearing on the concerns

about his counsel reflected in his letter. The People counter that Garcia either invited the error or waived this contention. Alternatively, the People argue that the district court properly construed Garcia's letter as an ineffective assistance of counsel claim and, as such, properly postponed consideration of the issues raised in the letter until after sentencing.

## A. Invited Error and Waiver

¶ 11 The People argue that, by agreeing to the court's proposal to take up Garcia's contentions in a postconviction motion, Garcia invited the error he now asserts on appeal. We disagree.

¶ 12 "The doctrine of invited error prevents a party from complaining on appeal of an error that he or she has invited or injected into the case; the party must abide the consequences of his or her acts." *People v. Rediger*, 2018 CO 32, ¶ 34, 416 P.3d 893, 901. "Invited error is a narrow doctrine and applies to errors in trial strategy but not to errors that result from oversight." *Id.*

¶ 13 We hold that neither Garcia nor his counsel invited the claimed error. The court interpreted Garcia's pro se letter as a request for postconviction relief under Crim. P. 35(c) and proposed to address the issues raised in the letter through that lens.

Although Garcia and his counsel assented to the court's proposal, this plan of action was not their idea, and they did not suggest it as a matter of strategy. *See id.* at ¶¶ 36-37, 416 P.3d at 902 (characterizing the "acquiescence" at issue in *Horton v. Suthers*, 43 P.3d 611, 619 (Colo. 2002), as a "specific admission[]" amounting to an effective concession, and distinguishing cases where a party, by mere oversight, generally expresses satisfaction with a proposed course of conduct).

¶ 14    The People next contend that Garcia waived the claimed error. We are, again, unpersuaded. Waiver is "the *intentional* relinquishment of a *known* right or privilege." *Id.* at ¶ 39, 416 P.3d at 902 (quoting *Dep't of Health v. Donahue*, 690 P.2d 243, 247 (Colo. 1984)). We indulge every reasonable presumption against waiver. *Id.* No evidence in the record suggests that Garcia intentionally relinquished his request for substitute counsel before sentencing, especially given that he conflated two legally distinct concepts — one involving counsel's past representation and one involving counsel's representation going forward — in his letter.

¶ 15    Nor does counsel's fleeting, half-hearted approval of the court's proposal — which she made immediately before requesting a

6

continuance and without conferring with Garcia — reflect the kind of informed and intentional waiver contemplated in *Rediger*. For these reasons, Garcia did not waive his claim that the court erred by sentencing him before conducting a *Bergerud* hearing.

B.   The Nature of the Allegations Raised in Garcia's Letter

¶ 16    In his letter, Garcia generally asserted that he had received ineffective assistance of counsel and requested a *Bergerud* hearing. But upon close scrutiny, it becomes apparent that his allegations raised discrete — albeit related — issues that implicated two different procedures. Because Garcia wrote the letter himself, we read the allegations in his letter broadly. *People v. Cali*, 2020 CO 20, ¶ 34, 459 P.3d 516, 522 ("[W]e will broadly construe a pro se litigant's pleadings to effectuate the substance, rather than the form, of those pleadings . . . ."); *Bergerud*, 223 P.3d at 696-97.

¶ 17    We first consider whether the three allegations in Garcia's letter implicated the alleged ineffective assistance of his counsel earlier in the case or constituted a request for new counsel in connection with his forthcoming sentencing.

¶ 18    The first two allegations were forward-looking. In those allegations, Garcia requested new counsel before his sentencing

7

hearing for two reasons. First, he suggested that communications with his current attorneys had broken down because they had only visited him in custody for the OSE and PSI interview. Second, Garcia asserted that his counsel had not yet formulated a sentencing strategy even though the sentencing hearing was less than two weeks away. In sum, Garcia asserted that he would receive an unjust sentence unless the court appointed new lawyers for him.

¶ 19 A court will typically hold a *Bergerud* hearing to determine whether a substitution of counsel is required under the facts of the case. *See Bergerud*, 223 P.3d at 703 ("[A] request for new counsel necessarily implies a limited waiver of the attorney-client privilege; the trial court must be able to inquire into the details of a dispute between a defendant and his attorneys — outside the presence of opposing counsel — in order to evaluate the dispute's constitutional character and determine whether the defendant is entitled to replacement counsel.").

¶ 20 Garcia appropriately requested a *Bergerud* hearing to address the first two allegations in his letter, as they focused on whether his current counsel could competently represent him at the upcoming

sentencing hearing. *See People v. Ramcharan*, 2024 COA 110, ¶ 77, 562 P.3d 425, 438 (explaining that a *Bergerud* hearing is intended to "adjudicate a defendant's assertion that his appointed attorney cannot or will not completely represent him"). Thus, we agree with Garcia that the court incorrectly characterized his first two allegations as claims for postconviction relief. The court interpreted those allegations as Crim. P. 35(c) ineffective assistance of counsel claims rather than as *Bergerud* claims, in which a defendant seeks new counsel going forward in the case. *See Bergerud*, 223 P.3d at 703.

¶ 21   In contrast, the third allegation in the letter — that Garcia's counsel withheld evidence of one or both victims' recantation — is fundamentally retrospective. It related to his counsel's effectiveness before Garcia entered into the plea agreement. Although he did not explicitly challenge his guilty plea, Garcia's third allegation appears to call into question whether his guilty plea was knowingly, intelligently, and voluntarily entered in light of his counsel's alleged ineffectiveness.

¶ 22   "The right to counsel is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution and is

9

considered essential to a fair trial." *People v. Rodriguez*, 2022 COA 98, ¶ 62, 521 P.3d 678, 689. Because ineffective assistance claims implicate the constitutional right to the effective assistance of counsel, *see People v. Houser*, 2020 COA 128, ¶ 27, 490 P.3d 863, 870, they may be presented through a Crim. P. 35(c)(2)(I) motion. That rule provides that an "application for postconviction review" may be premised on the claim that the defendant's "conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state." Crim. P. 35(c)(2)(I). Ineffective assistance claims are "generally not permitted . . . on direct appeal because such a claim ordinarily requires the development of a factual record that will not have been developed in the trial court." *A.R. v. D.R.*, 2020 CO 10, ¶ 62, 456 P.3d 1266, 1281; *see also People v. Kelling*, 151 P.3d 650, 655 (Colo. App. 2006).

¶ 23    Thus, the court correctly determined that Garcia should raise his third allegation through a Crim. P. 35(c) claim following sentencing.

10

### 1.    Applicable Law and Standard of Review

¶ 24    We consider four factors when determining whether a district court erred by denying a defendant's request for substitution of counsel:

> (1)    the timeliness of the defendant's motion;
>
> (2)    the adequacy of the court's inquiry;
>
> (3)    whether the conflict between the defendant and his attorney was so great that it resulted in a *total lack of communication* or otherwise prevented an adequate defense; and
>
> (4)    whether the defendant substantially and unreasonably contributed to the conflict with his attorney.

*People v. Session*, 2020 COA 158, ¶ 15, 480 P.3d 747, 752 (emphasis added).

¶ 25    Upon receiving a request for substitute counsel, a court generally must conduct a hearing or inquire into the reasons for the request. *Id.* at ¶ 18, 480 P.3d at 753. "But when a defendant's

11

written motion describes his complaints in sufficient detail, the court need not inquire further." *Id.*; *see also People v. Arko*, 159 P.3d 713, 718-19 (Colo. App. 2006) (holding that further inquiry is not needed if the defendant fully articulated his disputes with counsel in his motion; those disputes pertained to matters of strategy; and they did not concern "a conflict of interest, a complete breakdown of communication[,] or an irreconcilable conflict which leads to an apparently unjust verdict") (citation omitted), *rev'd on other grounds*, 183 P.3d 555 (Colo. 2008). "We review a district court's denial of a defendant's request for substitution of counsel for an abuse of discretion." *Rodriguez*, ¶ 61, 521 P.3d at 689.

¶ 26    Further, we will not reverse a district court's decision if the court "reache[d] the correct result although by an incorrect analysis." *People v. Quintana*, 882 P.2d 1366, 1375 (Colo. 1994), *abrogated on other grounds by Rojas v. People*, 2022 CO 8, 504 P.3d 296; *see also People v. Garcia*, 2012 COA 79, ¶ 62, 296 P.3d 285, 293 ("We may affirm . . . on any ground that is supported by the record."); *People v. Aarness*, 150 P.3d 1271, 1277 (Colo. 2006) (holding that an appellate court may affirm a district court's ruling on different grounds).

## 2.    Analysis

¶ 27    Although the court mischaracterized the first two claims in Garcia's letter, it nonetheless reached the correct result on those two allegations because Garcia's request for substitute counsel failed as a matter of law. An indigent criminal defendant has a constitutional right to counsel, but he does not "have the right to demand a particular attorney." *Session*, ¶ 14, 480 P.3d at 752. Thus, "[b]efore change of counsel is warranted[,] the trial court must verify that the defendant has 'some well founded reason for believing that the appointed attorney cannot or will not completely represent him.'" *Ramcharan*, ¶ 85, 562 P.3d at 439 (quoting *People v. Arguello*, 772 P.2d 87, 94 (Colo. 1989)). "[A] court isn't required to substitute counsel unless a defendant establishes 'good cause, such as a conflict of interest, a complete breakdown of communication[,] or an irreconcilable conflict which leads to an apparently unjust verdict.'" *Session*, ¶ 14, 480 P.3d at 752 (quoting *Arguello*, 772 P.2d at 94).

¶ 28    In the first allegation, Garcia alleged a breakdown in communication — a recognized justification for substitution of counsel. *See id.* But he admitted that counsel attended his OSE

13

and PSI interview. Garcia's first allegation thus fails under *Session* because he did not allege a conflict "so great that it resulted in a *total* lack of communication." *Id.* at ¶ 15, 480 P.3d at 752 (emphasis added); *see also People v. Faussett,* 2016 COA 94M, ¶ 24, 409 P.3d 477, 483 (holding that a total breakdown in communication means such minimal contact with the attorney that meaningful communication was not possible); *People v. Johnson,* 2016 COA 15, ¶ 32, 381 P.3d 348, 355 (holding that an allegation of "infrequent visits from counsel" is insufficient to establish a complete breakdown in communication).

¶ 29    Garcia's second allegation in his letter similarly fails as a matter of law. Garcia asserted in that allegation that his counsel had not yet formulated a mitigation strategy for sentencing, even though the sentencing hearing was less than two weeks away. But counsel had more than a week to develop such a strategy and, critically, Garcia did not allege that he had any reason to believe that the attorneys would not be prepared by the time of the sentencing hearing.

¶ 30    It was the sole responsibility of Garcia's attorneys to determine when and how they would prepare for the sentencing hearing.

"Defense counsel stands as captain of the ship in ascertaining . . . what strategy should be employed in the defense of the case." *Arko*, 183 P.3d at 558 (quoting *Steward v. People*, 498 P.2d 933, 934 (Colo. 1972)). Garcia's lack of confidence in counsel's preparedness in the weeks before sentencing did not amount to the type of conflict of interest, complete breakdown in communication, or irreconcilable conflict that warrants substitution of sentencing counsel. *See Session*, ¶ 15, 480 P.3d at 752.

¶ 31 In sum, the court reached the correct result by rejecting the first two allegations in Garcia's letter.

### D. The Third Allegation in Garcia's Letter

¶ 32 Although Garcia did not explicitly challenge his guilty plea in the third allegation in his letter, in that allegation, Garcia appeared to assert that he had not knowingly, intelligently, and voluntarily entered into the plea agreement because of his counsel's alleged ineffectiveness. As explained, *supra* Part II.B, these types of retrospective ineffective assistance of counsel arguments are properly presented in Crim. P. 35(c) motions.

¶ 33 Thus, the court correctly determined that Garcia should raise his third allegation through a Crim. P. 35(c) claim following his

sentencing.  *See A.R.*, ¶ 62, 456 P.3d at 1281; *Kelling*, 151 P.3d at 655.

### III.   Sentencing Considerations

¶ 34     Finally, Garcia asserts that, in fashioning his sentence, the court erred by considering factors not contemplated in the sentencing statute.  The People counter that Garcia challenges the propriety of his sentence, which, on these facts, we may not review.  We agree with the People.

¶ 35     "When a sentence is imposed upon any person following a conviction of any felony, . . . the person convicted shall have the right to one appellate review of the propriety of the sentence." § 18-1-409(1), C.R.S. 2024.  But where, as here, "the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence."  *Id.*

¶ 36     "'[T]he propriety of the sentence,' as that phrase is used in [section 18-1-409(1)], does not comprehend the manner in which the sentence was imposed (i.e., the propriety of the *sentencing proceeding*)."  *Sullivan v. People*, 2020 CO 58, ¶ 4, 465 P.3d 25, 27.

Thus, the statute does not bar appeals concerning the manner in which a sentence was imposed. *Id.* at ¶¶ 4, 17, 465 P.3d at 27, 30.

¶ 37    "Illegal sentences should not be confused with sentences imposed in an illegal manner." *Tennyson v. People*, 2025 CO 31, ¶ 29, 569 P.3d 815, 823. Illegal sentence claims — claims challenging the propriety of a sentence — implicate the "intrinsic fairness or appropriateness of the sentence itself taking into account 'the nature of the offense, the character of the offender, and the public interest.'" *Sullivan*, ¶ 13, 465 P.3d at 28-29 (quoting *People v. Malacara*, 606 P.2d 1300, 1302-03 (Colo. 1980)); *see also Tennyson*, ¶¶ 25-27, 569 P.3d at 823. In contrast, illegal manner claims — claims challenging the propriety of the sentencing proceeding — involve "extrinsic factors and procedures which affect the determination of the sentence," including "the sufficiency and accuracy of the information on which the sentence was based." *Sullivan*, ¶ 13, 465 P.3d at 29 (quoting *Malacara*, 606 P.2d at 1303); *see also Tennyson*, ¶ 29, 569 P.3d at 823.

¶ 38    On appeal, Garcia argues that the sentencing court "did not balance the many facets of sentencing" set out in section 18-1-102.5, C.R.S. 2024, including "a lot of mitigation." He asserts

17

that, instead, the court "imposed the maximum sentence per the plea agreement entirely based on how old the victims would be when Mr. Garcia would be released from the Department of Corrections."

¶ 39    We conclude that Garcia challenges the propriety of his sentence.  He contests the intrinsic fairness or appropriateness of the sentence, rather than alleging a defect in the "extrinsic factors and procedures" or the imposition of a sentence without adequate underlying information.  Accordingly, we hold that section 18-1-409(1) precludes us from reviewing this contention.

## IV.    Disposition

¶ 40    The sentence is affirmed.

JUDGE PAWAR and JUDGE LUM concur.