**Edwin W. SCARBOROUGH, Defendant
Below, Appellant**

v.

**STATE of Delaware, Plaintiff
Below, Appellee.**

No. 328, 2006.

Supreme Court of Delaware.

Submitted: March 7, 2007.
Decided: April 26, 2007.

---

**16.** *See Grabowski v. Mangler,* 2007 WL 121845 (Del.Super.2007).

Bernard J. O'Donnell, Office of Public Defender, Wilmington, DE, for appellant.

John Williams, Department of Justice, Dover, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND and JACOBS, Justices.

STEELE, Chief Justice:

Defendant-appellant Edwin Scarborough appeals from a Superior Court judge's denial of his request to withdraw his guilty plea. After Scarborough pleaded guilty to

three felonies, he later attempted to withdraw his guilty plea at the sentencing hearing. Scarborough argued that the Superior Court judge should permit him to withdraw his guilty plea because, at the time he signed the plea, he did not believe that the State would move to declare him an habitual offender under 11 *Del. C.* § 4214(a) because of an oral side agreement that he had made with the prosecutor not set forth in his written plea agreement.[1] The Superior Court judge denied Scarborough's motion and sentenced him as an habitual offender.[2]

Scarborough argues that the Superior Court judge abused his discretion by denying Scarborough's motion to withdraw his guilty plea because Scarborough had a "fair and just reason" for doing so.[3] After consideration of the record, we hold that the Superior Court judge did not abuse his discretion by denying Scarborough's motion to withdraw his guilty plea. Scarborough, defense counsel, and the prosecutor were all present for the plea colloquy and no one told the judge that there was an agreement between Scarborough and the State outside of the written plea agreement. Therefore, the judge taking the plea reasonably relied on the written plea agreement and the parties' representations in open court. Those representations and the written plea agreement itself belie any "fair and just reason" for allowing Scarborough to withdraw his guilty plea.

On appeal, however, both the State and Scarborough concede that there was, in fact, an "oral agreement outside of" the written plea agreement. Despite the inconvenience of an heretofore undisclosed "oral agreement outside of" the written plea agreement that both parties represented to be the "sole" agreement between them, the State and Scarborough take bright line positions on this appeal. Scarborough maintains, despite his complicity, that the mere failure to disclose the oral side agreement establishes a "fair and just reason" that entitles him to withdraw his plea. Similarly, and equally without grace, the State maintains that Scarborough knew of the oral side agreement at the time he entered his plea, and that if he did not comply with its terms that the State would seek, at sentencing, a declaration that Scarborough was an habitual offender. Neither Scarborough nor the State distinguishes the issue of the validity of the plea from Scarborough's status as an habitual offender. Nevertheless, because the record does not reflect either the terms of the "outside oral agreement" and whether Scarborough fulfilled, or in good faith could have fulfilled, its terms, we remand to the Superior Court for further findings. If Scarborough proves that he fulfilled the terms of the "oral side agreement," then

---

1. 11 *Del. C.* § 4214(a). 11 *Del. C.* § 4214(a) defines an habitual offender as:

   Any person who has been 3 times convicted of a felony, other than those which are specifically mentioned in subsection (b) of this section, under the laws of this State, and/or any other state, United States or any territory of the United States, and who shall thereafter be convicted of a subsequent felony of this State is declared to be an habitual criminal, and the court in which such 4th or subsequent conviction is had, in imposing sentence, may in its discretion, impose a sentence of up to life imprisonment upon the person so convicted.

2. The Superior Court judge sentenced Scarborough to the following concurrent sentences: two years at Level V (subject to a credit for 18 days served previously) for maintaining a vehicle for keeping a controlled substance; two years Level V imprisonment, suspended for six months at Level IV home confinement for tampering with physical evidence; and one year imprisonment at Level V, suspended for one year at Level III.

   *Id.*

3. Super. Ct.Crim. R. 32(d).

the State could be barred from requesting that he be declared an habitual offender. Accordingly, we AFFIRM the judgment denying the motion to withdraw the guilty plea and REMAND for further findings and conclusions consistent with this Opinion.

## FACTS AND PROCEDURAL HISTORY

On September 15, 2005, Scarborough pleaded guilty pursuant to a written plea agreement to three charges: two felony counts of maintaining a vehicle for keeping controlled substances, one count of tampering with physical evidence and one misdemeanor count of resisting arrest. The State entered nolle prosequis on the six remaining counts set forth in two separate indictments.

Scarborough agreed to two conditions stated in the *written plea agreement:* first, Scarborough had to testify truthfully against his two codefendants at trial; [4] and second, Scarborough had to submit to substance abuse evaluation and treatment. Scarborough marked the "habitual offender" block on the Plea Agreement Form, and his Truth–in–Sentencing Guilty Plea Form also contained a handwritten note that stated "if defendant is habitual, potential 0–life." Furthermore, defense counsel made the following representation to the judge:

I have informed [Scarborough] that the statutory penalties for the total charges total six years in prison, and I have also informed him that if the State should file an habitual offender petition, and if he is a habitual offender, that if those things happened that the potential sentence would be from zero to life.

During the plea colloquy, the judge asked Scarborough if everything that his counsel said was accurate, and Scarborough said, "yes." The judge explained to Scarborough that, based on his guilty plea, he could face up to six years in prison or a potential maximum of life imprisonment if the State moved for habitual offender status and the judge declared him an habitual offender at sentencing. Scarborough stated that he understood the potential sentence. In accordance with Superior Court Rule of Criminal Procedure 11(e)(1)(B),[5] the judge also specifically asked Scarborough, "Are you aware that the Court is not bound by any agreements that you have made with the prosecutor up to this point or up through sentencing, regarding sentencing?" Scarborough answered "Yes, I do."

After Scarborough represented that no one had threatened or forced him into pleading guilty, the judge reviewed the TIS Guilty Plea Form with Scarborough. Scarborough acknowledged his waiver of his constitutional trial rights, and *agreed* that the plea agreement comprised his *entire agreement* with the State. Finally, the judge asked Scarborough, "Are you aware that once you enter into this plea, if it is accepted, that it will be almost impossible for you to back out of it?" Scarbor-

---

4. Both of Scarborough's codefendants agreed to pleas rather than proceed to trial. As a result, Scarborough did not have to fulfill this condition.

5. Super. Ct.Crim. R. 11(e)(1)(B):
   The attorney general and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney general will do any of the following: ... [m]ake a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court.
   *Id.*

ough answered, "Yes." Even though both had heard Scarborough represent that the written agreement was the entire agreement between him and the State, the prosecutor and defense counsel advised the judge that they knew of no reason why the Court should not accept the plea. The judge then found that Scarborough had knowingly and voluntarily consented to the plea, and accepted the plea.

After Scarborough failed to appear at his first scheduled sentencing, the State filed a motion to declare Scarborough an habitual offender under 11 *Del. C.* § 4214(a). At a second scheduled sentencing hearing on January 12, 2006, Scarborough argued that the State should not have filed an habitual offender petition, and stated that he wanted to withdraw his guilty plea. Scarborough represented that at the time he entered his plea that his counsel advised him that the State would request probation and that he knew that he had to fulfill certain conditions for the State to do so, but that he was unable to fulfill them. Specifically, counsel stated that "[Scarborough's] position is ... [t]here were conditions, and if the conditions were met the sentencing recommendation would have been different, but he has had unfortunate circumstances." Defense counsel further explained that, if the judge granted the State's habitual offender application, Scarborough would need new counsel "because [Scarborough] was informed that the State could under certain conditions file an habitual motion, and that is the reason I wrote it on the Guilty Plea Form...."

The judge noted Scarborough's acknowledgment of the plea agreement during the original plea colloquy. The prosecutor stated that Scarborough "was released with certain conditions and he failed to

comply, ... [s]o consistent with what the presentence report has indicated, he is just trying to avoid accepting responsibility." Based on these assertions, the judge appointed new counsel and scheduled a hearing on Scarborough's motion to withdraw his guilty plea.

On March 27, 2006, Scarborough appeared with different counsel at that hearing. At the hearing, his new counsel argued that Scarborough should be able to withdraw his guilty plea because the prosecutor and Scarborough had made an off the record oral agreement that the State would not move to declare Scarborough an habitual offender if he worked as an informant for the police. The State responded that Scarborough had agreed "to cooperate with the police in an investigation, [but] he never did that." The State further noted that the prosecutor sent emails to the police to enforce this agreement, one of which stated, "Please make sure [Scarborough] knows he must work, otherwise, he is facing a habitual offender petition."

The judge pointed out that the plea agreement contained no reference to this oral side agreement, and that the written agreement itself clearly contemplated that Scarborough might be declared an habitual offender. The judge also noted that *Scarborough stated* at the plea colloquy that (i) the plea agreement comprised his *entire agreement* with the State, and that (ii) he knew of the possibility that the State would seek to declare him an habitual offender. After evaluating five requisite factors [6] to determine whether he should grant Scarborough's motion to withdraw his guilty plea, the judge denied the motion.

At sentencing on May 26, 2006, Scarborough's counsel [7] agreed that Scarborough

---

**6.** *See State v. Cabrera,* 891 A.2d 1066, 1069–70 (Del.Super.2005).

**7.** This was Scarborough's third attorney.

qualified for habitual offender status under 11 *Del. C.* § 4214(a). The sentencing judge sentenced him to the statutory minimum term of two years Level V imprisonment for the maintaining a vehicle charge and suspended terms of imprisonment for two other convictions.

## DISCUSSION

■ Scarborough now claims that the judge erred by refusing to permit him to withdraw his guilty plea, because he had a "fair and just reason" for withdrawing his plea under Superior Court Criminal Rule 32(d).[8] Specifically, Scarborough contends that the plea agreement that resulted in his being sentenced as an habitual offender did not disclose the entire agreement between the parties on the record or *in camera* at the time the State offered the plea as required by Superior Court Criminal Rule 11(E)(2).[9]

■ "A motion to withdraw a guilty plea is addressed to the sound discretion of the trial court."[10] The defendant bears the burden to show, under Superior Court Criminal Rule 32(d), that there is a fair and just reason to permit the withdrawal.[11] In evaluating whether to permit a defendant to withdraw his guilty plea, the judge must address five questions:

1) Was there a procedural defect in taking the plea;

2) Did [defendant] knowingly and voluntarily consent to the plea agreement;

3) Does [defendant] presently have a basis to assert legal innocence;

4) Did [defendant] have adequate legal counsel throughout the proceedings; and,

5) Does granting the motion prejudice the State or unduly inconvenience the Court. [*sic*][12]

These factors are not factors to be balanced; indeed, some of the factors of themselves may justify relief.[13]

■ "Although the decision to permit the withdrawal of a guilty plea under Superior Court Criminal Rule 32(d) lies within the sound discretion of the Trial Court, ... that discretion is governed by Superior Court Criminal Rule 11."[14] Rule 11 states that "[t]he Court ... shall not accept such plea ... without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the ... consequences of the

---

**8.** Super. Ct.Crim. R. 32(d): "If a motion for withdrawal of a plea of guilty or nolo contendere is made before imposition or suspension of sentence or disposition without entry of a judgment of conviction, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." *Id.*

**9.** Super. Ct.Crim. R. 11(e)(2) states:

If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(B) [a non-binding plea agreement recommended by the attorney general or the defendant for a particular sentence to the court] the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.
*Id.*

**10.** *Blackwell v. State,* 736 A.2d 971, 972 (Del. 1999).

**11.** *State v. Cabrera,* 891 A.2d 1066, 1069 (Del.Super.2005).

**12.** *Id.* at 1069–70.

**13.** *Patterson v. State,* 684 A.2d 1234, 1239 (Del.1996).

**14.** *Wells v. State,* 396 A.2d 161, 162 (Del. 1978) (internal citation omitted).

plea."[15] Only where the judge determines that "the plea was not voluntarily entered or was entered because of misapprehension or mistake of defendant as to his legal rights" should the judge grant the defendant's request to withdraw his guilty plea.[16]

"[A] defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[17] Where the defendant has signed his Truth–in–Sentencing Guilty Plea Forms and has answered at the plea colloquy that he understands the effects of the plea, the defendant must show by clear and convincing evidence that he did not sign those forms knowingly and voluntarily.[18]

Scarborough contends that the prosecutor orally agreed, outside of the written plea agreement, that the State would not move to have him declared an habitual offender if he agreed to assist the police as an informant. The State, nevertheless, moved to have Scarborough declared an habitual offender. Scarborough argues he should be able to withdraw his plea because the State did not follow through with its promise, and that he would not have originally agreed to the plea had he known that the State would move for habitual offender status in any event. It appears that "misapprehension," not involuntariness or "mistake as to his legal rights," now underlies Scarborough's complaint.

The State suggests that *Savage v. State* is controlling.[19] Savage pled guilty to five drug and weapon charges,[20] but before sentencing, moved to withdraw his guilty plea. The sentencing judge denied the motion because Savage had entered his plea knowingly and voluntarily under oath and admitted guilt.[21] The judge then sentenced Savage. On appeal, Savage argued that he made his signature unknowingly and involuntarily because he believed that he would receive a maximum of four years in prison, rather than the maximum sentence of 22 years he received at his sentencing hearing.[22] This Court found that the judge did not abuse his discretion. We held:

> Savage's claim is unconvincing in view of the Truth–in–Sentencing Guilty Plea Form signed by Savage and his statements at the plea colloquy. The written forms that Savage signed clearly state that Savage faced a total consecutive maximum penalty of twenty-two years and six months of incarceration, and that

---

**15.** Super. Ct.Crim. R. 11. Rule 11 requires that the judge must be satisfied that "the defendant understands the nature of the charge and the maximum possible penalty provided by law[,]" that the judge "address the defendant personally in open court, determining that the plea is voluntary and not the result of force or threats or of promises apart from a plea agreement[,]" and that the judge "inquire as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney general and the defendant or the defendant's attorney." *Id.* 11(c), (d). Moreover, a trial judge may only accept a guilty plead "after due consideration of the views of the parties and the interest of the public in the effective administration of justice." *Id.* 11(b).

**16.** *State v. Insley,* 141 A.2d 619, 622 (Del. 1958).

**17.** *Somerville v. State,* 703 A.2d 629, 632 (Del. 1997). The transcript of the plea colloquy shows that Scarborough was sworn and, therefore, under oath when he responded in counsels' presence to the judge's questions.

**18.** *Savage v. State,* 815 A.2d 349, 2003 WL 214963, at *2 (Del.) (Table).

**19.** *Id.*

**20.** *Id.* at *1.

**21.** *Id.*

**22.** *Id.* at *2.

the minimum mandatory penalty was four years. Moreover, during the plea colloquy Savage represented to the Superior Court that he was entering his plea with the understanding that he was facing a minimum mandatory penalty of four years of incarceration and a maximum penalty of twenty-two years and six months. [citation omitted] In the absence of clear and convincing evidence to the contrary, Savage is bound by his answers on the Truth–in–Sentencing Guilty Plea Forms and by his testimony prior to the acceptance of the guilty plea.[23]

In this case, Scarborough also signed a Truth–in–Sentencing Guilty Plea Form. At the plea colloquy he stated that he understood that the State could move to declare him an habitual offender and that he could potentially receive a life sentence.[24] The sentencing judge asked Scarborough: "[h]ave you discussed this matter fully, and including the maximum possible penalties that we have discussed with [your attorney]?" Scarborough responded, "Yes, I have." Similarly, Scarborough noted on his plea agreement that he could be sentenced to life imprisonment if the State moved to declare him as an habitual offender. Scarborough also admitted that he knew the State could seek to declare him an habitual offender because of the three offenses to which he had pleaded

guilty. Given these admissions, Scarborough's burden was to establish that he entered his plea involuntarily, under a misapprehension of fact or because of a mistake about his legal rights, by clear and convincing evidence. A failure to establish at least one of these elements would require that the judge deny the motion to withdraw the plea.

The judge analyzed the five *Cabrera* factors to determine whether he should grant Scarborough's request to withdraw his guilty plea. The judge noted that: (1) there was no procedural defect in taking the plea; (2) Scarborough knowingly and voluntarily consented, under oath, to the plea agreement; (3) Scarborough might presently have a basis to assert legal innocence, though he believed that there was not a basis for legal innocence,[25] and the State had a statement in which Scarborough admitted his guilt; (4) Scarborough had adequate legal counsel throughout the proceedings;[26] and, (5) granting Scarborough's motion might prejudice the State because of the difficulty of finding witnesses. The judge found that none of the five factors supported Scarborough's claim that he had a "fair and just reason" to withdraw his guilty plea. We agree, and hold that the trial judge did not abuse his discretion by denying Scarborough's request to withdraw his guilty plea.

---

**23.** *Id.*

**24.** At his first hearing, Scarborough's attorney stated explicitly: "I have also informed [Scarborough] that if the State *should* file an habitual offender petition, and if he is an habitual offender, that if those things happen that the potential sentence would be from zero to life."

**25.** The Superior Court judge noted:
   At this juncture now, we're going on a year after all of this was done, and half a year after you pled guilty to that crime. You know, it's a bit disingenuous to suggest

that, well, you know, I didn't know that there was an illegal substance in the car. Maybe there was, maybe there wasn't, I don't know. And to suggest that that indicates a basis of legal innocence, I don't see it.
   *Id.*

**26.** The Superior Court judge noted that Scarborough "specifically agreed to that point itself." He also stated, however, that Scarborough could "decide upon [counsel's adequacy] at some point."

The present case, however, contains a nuance that distinguishes it from *Savage*—the parties' acknowledgement that they contrived an oral agreement outside of Scarborough's written plea agreement. We must, therefore, determine the significance of that oral side agreement to the State's motion to declare Scarborough an habitual offender. What, in other words, were the terms of the admitted "side agreement;" were they or could they be fulfilled; and, what, if anything, would be its effect on the State's "option" to have Scarborough declared an habitual offender?

Scarborough relies heavily upon *Cole v. State* [27] as the basis to argue that his misapprehension about the effect of the side agreement established a fair and just reason to withdraw his guilty plea. In *Cole*, the defendant made a statement to prosecutors implicating his codefendant in a crime consistent with an oral agreement that he believed he had reached with the State. Under that agreement, Cole believed that the prosecutors would use his statements only for the purpose of determining if the State would seek the death penalty against him. The State, however, showed Cole's statement to his accomplice. Cole moved to suppress all evidence obtained from the use of his statement to prosecutors based on that alleged agreement.

On appeal, we remanded the case to the trial judge to determine, consistent with contract principles, whether an oral agreement in fact existed, and, if so, what its terms might have been. [28] We noted that plea agreements "are undertaken for mutual advantage and governed by contract principles[,]" [29] and that in every plea agreement, the covenant of good faith and fair dealing applies. [30] The covenant of good faith and fair dealing requires:

> a party in a contractual relationship to refrain from arbitrary or unreasonable conduct which has the effect of preventing the other party to the contract from receiving the fruits of the bargain. Thus, parties are liable for breaching the covenant when their conduct frustrates the overarching purpose of the contract by taking advantage of their position to control implementation of the agreement's terms. [31]

Because "the State will almost always be in a position to take advantage of its superior ability to control implementation of the agreement's terms," we admonished that the judge must be vigilant to ensure that the State does not violate these basic contract principles.

In *Cole*, we further emphasized the importance of reducing an agreement to writing to save time and unnecessary confusion:

> We note that the parties could have easily avoided this confusion by putting their agreement in writing or on the record BEFORE the proffer. Under Superior Court Civil Rule 90(c), the Superior Court will not consider agreements between attorneys unless they are in writing and are filed with the Prothonotary or stated in the record in the presence of the Court. [cite omitted] Moreover, the Superior Court Criminal Rules provide that "in all cases not pro-

---

**27.** 922 A.2d 354, 2005 WL 2805562 (Del.) (Table).

**28.** *Id.* at *1.

**29.** *Id.* (citing *Washington v. State,* 844 A.2d 293, 296 (Del.2004)).

**30.** *Id.* at *5.

**31.** *Id.* (citing *Dunlap v. State Farm Fire & Cas. Co.,* 878 A.2d 434, 442 (Del.2005)).

vided for by rule or administrative procedure, the court shall regulate its practice in accordance with the applicable Superior Court civil rule or in any lawful manner not inconsistent with these rules or the rules of the Supreme Court." [cite omitted] While the aforementioned rules do not expressly apply to an agreement between a criminal defendant and the State, we think that the policy embedded in these rules applies to the circumstances in this case. To the extent possible, all agreements of this type should be in writing or made on the record before the court. This will greatly reduce the potential for after-the-fact confusion. More importantly, by spending the time necessary to reduce an agreement to writing, the parties can obviate the necessity for holding a hearing to determine whether an agreement exists and its terms, thereby saving several days of a judge's and the parties' time.[32]

Here, as in *Cole,* the parties failed either to put the "oral side agreement" in writing or to make an *in camera* record of the oral agreement at some point close in time to the plea colloquy. We have grave concerns about the candor of the parties during the plea colloquy that occurred here. It is disconcerting that counsel remained silent when Scarborough stated in open court that the written agreement constituted the entire agreement between the State and Scarborough during the plea colloquy. Having said that, we also acknowledge that the State, the defendants, and their respective counsel often enter into delicate negotiations over conditions for pleas with-

in limited timeframes. On occasion, the parties wish to enhance the prospect for successful disposition of pending charges short of trial by keeping sensitive plea conditions from reaching public eyes and ears.

Ultimately, however, failing to disclose oral side agreements, no matter how sensitive their nature may be, does little to advance the cause of justice, and results in wasteful, unnecessary litigation expense best evidenced by the proceedings here. Super. Ct.Crim. R. 11(e)(2) requires *in camera* disclosure and record evidence of nonpublic oral agreements at the time the plea is offered. While neither party, for understandable reasons, wanted the side condition to become generally known, a failure to make *any* record of the oral side conditions created a litigation "accident waiting to happen." The parties' objective, no matter how laudable, caused counsel to remain mute in the face of Scarborough's misrepresentation, under oath, about the plea agreement's actual terms in open court. Counsel gave the Court no candid caveat that a side agreement had been negotiated. Had they done so, consistent with the policy Superior Court had established in its Crim. R. 11(e)(2), counsel would have avoided an implication that they had remained silent in the face of an arguable duty to speak.[33] Enhanced law enforcement and the safety of putative "informants" must, of course, be considered, but within the parameters of an efficient, candid and effective proceeding that is capable of producing an enforceable plea agreement.

32. *Id.* at *9. *See also Cole v. State,* 2007 WL 731406, *7 (Del.).

33. *See* Del. Lawyers' Rules of Professional Conduct Rule 3.3. Candor Toward the Tribunal (in pertinent part):

(a) A lawyer shall not knowingly:

(3) Offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer [comes to] know[s] of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.

The State concedes that there was an oral agreement outside of the written plea agreement, but argues that Scarborough failed to abide in good faith with the terms of that oral agreement. Scarborough appears to concede that he did not comply, but argues that he could not comply with the terms in good faith because acting as an informant would expose him to unreasonable risk of personal harm.[34] Our review of the record, leaves us incapable of determining what the exact terms of the oral side agreement were, whether Scarborough fulfilled or could realistically have fulfilled those terms, or whether any factual issue raised by the oral side agreement resulted in Scarborough's "misapprehension" about the effect of his guilty plea. Therefore, we must remand the case to the Superior Court for further factual findings that will enable these determinations to be made in the first instance without limiting the Superior Court's reconsideration of its judgment about the status of the guilty plea or the issue of habitual offender status.

## CONCLUSION

For the foregoing reasons, this case is REMANDED to the Superior Court for further proceedings consistent with this Opinion.

---

**34.** "[Scarborough] would have to sit in a position which would cause danger to himself as he would be revealed as an informant."