# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ROBERT L. SMITH, )
)
    Defendant Below, )
    Appellant, )
)
v. ) No. 179, 2024
)
STATE OF DELAWARE, ) Cr. ID No.  1602012206
)
    Appellee. )

## Analysis of *Scarborough* Factors Upon Remand

Submitted: November 15, 2024
Decided: February 11, 2025

Andrew J. Vella, Esquire, Chief of Appeals, Delaware Department of Justice, Wilmington, Delaware, Attorney for the State.

Edward C. Gill, Esquire, Law Offices of Edward C. Gill, P.A., Wilmington, Delaware, Rule 61 Counsel for Defendant Robert Smith.

**JURDEN, P.J.**

## I. INTRODUCTION

On December 31, 2023, the Commissioner filed a Report recommending that the Superior Court deny Smith's Motion for Postconviction Relief.[1] Smith objected to the Commissioner's Report in a timely manner.[2] On April 11, 2024, the Superior Court adopted the findings set forth in the Commissioner's Report and denied Smith's Motion for Postconviction Relief.[3] On May 2, 2024, Smith appealed the Superior Court's decision.[4]

Now on appeal, the Delaware Supreme Court remanded the case back to the Superior Court so that a complete *Strickland v. Washington*[5] analysis could be conducted to determine if Smith was prejudiced by his Trial Counsel's failure to withdraw his Guilty But Mentally Ill plea ("GBMI plea").[6]

## II. *STRICKLAND* STANDARD IN PLEA WITHDRAWAL CONTEXT

To prevail on a claim of ineffective assistance of counsel, the movant must

---

[1] D.I. 89.

[2] D.I. 90.

[3] *State v. Smith*, 2024 WL 1577183, at *1 (Del. Super. Apr. 11, 2024).

[4] D.I. 94. On appeal, Smith argues that the Superior Court erred in two respects. First, he contends that "[w]hile the Superior Court correctly found that trial counsel's performance in representing [] Smith was deficient pursuant to *Strickland v. Washington*, . . . it erred in finding no prejudice to [] Smith as a result of the deficient performance." Second, Smith argues that he was "denied his right to choose to go to trial and present the viable defenses of extreme emotional distress and self defense when he advised his counsel that [] was his decision and counsel recommended and [] Smith eventually acceded to pleading guilty pursuant to a plea agreement which afforded him no benefit." *See* Supreme Court Order, Trans. ID 75013408 (Nov. 15, 2024) ("Supreme Court Order") ¶ 8.

[5] *See generally Strickland v. Washington*, 466 U.S. 668 (1984).

[6] Supreme Court Order at 9.

satisfy the two-prong standard set forth in *Strickland*.[7] Under *Strickland*, the movant must prove that (1) his trial counsel's performance was objectively unreasonable; and (2) his defense was prejudiced as a result.[8] "To satisfy the second prong of *Strickland* in the plea withdrawal context, [the defendant] must show a reasonable probability that, but for his counsel's error, he would have insisted on going to trial and the trial court would have granted his motion to withdraw [his] plea."[9]

"Following a procedurally proper acceptance of [a] plea, the defendant must, under Superior Court Criminal Rule 32(d), establish a 'fair and just' reason in order to have a plea withdrawn prior to sentencing."[10] The Delaware Supreme Court in *Scarborough v. State* established five factors the trial court must consider in deciding whether to allow the withdrawal of a guilty plea.[11] The *Scarborough* factors are as follows:

(1) Was there a procedural defect in taking the plea;

(2) Did defendant knowingly and voluntarily consent to the plea agreement;

(3) Does defendant presently have a basis to assert legal innocence;

(4) Did defendant have adequate legal counsel throughout the proceedings; and

(5) Does granting the motion prejudice the State or unduly

---

[7] *Strickland*, 466 U.S. at 687.
[8] *Id*. at 687-88, 691-92.
[9] *Reed v. State*, 258 A.3d 807, 829-30 (Del. 2021).
[10] *Id*. at 823.
[11] *See generally Scarborough v. State*, 938 A.2d 644 (Del. 2007).

3

inconvenience the Court.[12]

"These factors are not factors to be balanced; indeed, some of the factors of themselves may justify relief."[13] It is the movant's burden to show that he is entitled to relief under *Strickland*; however, the trial court has an independent obligation to examine the *Scarborough* factors.[14]

## A. ANALYSIS OF THE *SCARBOROUGH* FACTORS

### 1. *Was there a procedural defect in taking the plea?*

#### a. Law

Title 11 *Del. C.* § 408(a) sets forth the process for entering a GBMI plea:

> Where a defendant's defense is based upon allegations which, if true, would be grounds for a verdict of "guilty, but mentally ill" or the defendant desires to enter a plea to that effect, no finding of "guilty, but mentally ill" shall be rendered until the trier of fact has examined all appropriate reports (including the presentence investigation); has held a hearing on the sole issue of the defendant's mental illness, at which either party may present evidence; and is satisfied that the defendant did in fact have a mental illness at the time of the offense to which the plea is entered. Where the trier of fact, after such hearing, is not satisfied that the defendant had a mental illness at the time of the offense, or determines that the facts do not support a "guilty, but mentally ill" plea, the trier of fact shall strike such plea, or permit such plea to be withdrawn by the defendant. A defendant whose plea is not accepted by the trier of fact shall be entitled to a jury trial, except that if a defendant subsequently waives the right to

---

[12] *Id.* at 649.
[13] *Id.* (citing *Patterson v. State*, 684 A.2d 1234, 1239 (Del. 1996)).
[14] Supreme Court Order ¶ 14 (citing *Reed*, 258 A.3d at 830).

a jury trial, the judge who presided at the hearing on mental illness shall not preside at the trial.[15]

In *Taylor v. State*, the Delaware Supreme Court acknowledged that "the statute is ambiguous on how to order the proceedings before adjudicating a defendant guilty but mentally ill of a crime by plea," and interpreted the statute as follows:

> A defendant can plead guilty but mentally ill to a crime, and the court can accept the plea in the same hearing after finding under Superior Court Criminal Rule 11 that the defendant's plea is made knowingly, intelligently, and voluntarily. But, the court should defer adjudicating the defendant guilty but mentally ill of the crime until after it holds a hearing where the sole issue is the defendant's mental illness. As part of the evidence at the second mental illness hearing, the court should consider the presentence investigation. After the second hearing, if the court is satisfied that the requirements of § 408(a) have been met, the court should adjudicate the defendant guilty but mentally ill of the offense and impose sentence. If the statutory requirements are not met, the court should strike the plea or allow the defendant to withdraw it.[16]

### b.    Facts

Smith's plea hearing ("Hearing") was held on August 30, 2017.[17] Before the Court engaged in a plea colloquy with Smith, the Court addressed Smith's mental illness with the State and Trial Counsel.[18] The parties had an opportunity to review the evidence, introduce any new evidence, and provide additional opinions from

---

[15] 11 *Del. C.* § 408(a).
[16] *Taylor v. State*, 213 A.3d 560, n.45 (Del. 2019).
[17] D.I. 24.
[18] *See generally* D.I. 36.

experts, if they so desired.[19]  In reviewing the GBMI evidence, the parties discussed Dr. Walsh's Psychosocial Assessment and Dr. Testa's Neurological Consultation.[20] Both defense experts agreed that at the time of the event Smith was suffering from Persistent Depressive Disorder, Borderline Personality Disorder, and numerous symptoms of Posttraumatic Stress Disorder.[21]  The State advised the Court that its expert, Dr. Mechanick, reviewed the defense experts' reports, interviewed Smith, and agreed that Smith qualified as GBMI under 11 *Del. C.* § 401(b) because his mental illness "affected his thinking, feeling, or action at the time of the crime."[22] Smith's Trial Counsel advised the Court that they found it appropriate to allow Smith to plead GBMI, and stated with "great confidence" that Smith was entering his GBMI plea "knowingly, intelligently, and voluntarily."[23]  The Court stated it had reviewed the defense experts' reports and the applicable statutory standard.[24]  The Court advised the parties it was "comfortable entertaining the plea."[25]  The parties

---

[19] *Id.*

[20] *Id.* at 2:11-3:3.  Smith's Trial Counsel said, "The basis for the Guilty But Mentally Ill plea [was] Dr. Walsh's report, which relie[d] on Dr. Testa's report where Dr. Walsh's opinion ultimately was that . . . to a reasonable degree of psychological certainty that on the date of Ms. Coffey's death, Mr. Smith was suffering from a metal illness consistent with the statutory definition of Guilty But Mentally Ill." *Id.* at 7:1-8.

[21] *Id.* at 8:5-20.

[22] *Id.* at 2:11-3:13. Dr. Mechanick's opinions are consistent with those of Drs. Walsh and Testa. *See id.* at 4:12-17.  Dr. Mechanick also opined that Smith was competent to enter his GBMI plea. *See id.* at 7:14-22.

[23] *Id.* at 8:21-9:2.

[24] *Id.* at 9:15-21.

[25] *Id.* at 9:20-21.

had no objection, and the Court engaged in a plea colloquy with Smith.[26] Satisfied that Smith's GBMI plea was warranted under 11 *Del. C.* § 401(b) and that Smith entered into it knowingly, intelligently, and voluntarily, the Court accepted Smith's GBMI plea.[27]

      c.     <u>Analysis</u>

The express language of 11 *Del. C.* § 408 requires the Court to review the defendant's presentence investigation report and hold a "sole hearing" on the issue of the defendant's mental illness prior to accepting the defendant's GBMI plea.[28] The Court did not review a presentence investigation report before the Hearing, and the Court did not hold a "sole hearing" on the issue of Smith's mental illness.[29] Therefore, the Court's actions were not compliant with the express language of the statute, nor did the Court follow the clarified GBMI plea process set forth by the Delaware Supreme Court in *Taylor v. State*.[30]

The Court points out that it reviewed the defense experts' reports prior to the Hearing, and their reports were later included in the presentence investigation

---

[26] *Id*. at 10:2-20:5.
[27] *Id*. at 20:1-5.
[28] 11 *Del. C.* § 408(a).
[29] At the time of the Hearing, a presentence report had not yet been requested. Such reports are not typically requested until after a defendant's plea is entered.
[30] *See supra* n.16.

7

report.[31] Although a "sole hearing" on Smith's mental illness was not held separately from the Hearing, the Court and parties did discuss Smith's mental illness and the evidence supporting the GBMI status prior to the Court engaging Smith in the plea colloquy.[32] Further, the parties stipulated that a hearing with live testimony of the experts was not necessary, and Smith's Trial Counsel did not object to the Court accepting Smith's GBMI plea at the Hearing.[33] Therefore, although the Court did not comply with the express language of 11 *Del. C.* § 408 or the process set forth in *Taylor v. State*, the experts' reports were reviewed and Smith's mental illness was discussed prior to his GBMI plea being accepted.

### 2. *Did Smith knowingly and voluntarily consent to the plea agreement?*

In *Somerville v. State*, the Delaware Supreme Court laid out the numerous protections defendants have throughout the guilty plea process:

> Prior to accepting a guilty plea, the trial judge must address the defendant in open court. The judge must determine that the defendant understands the nature of the charges and the penalties provided for each of the offenses. The record must reflect that the defendant understands that the guilty plea constitutes a waiver of a trial on the charges and a waiver of the constitutional rights to which he or she would have been entitled to exercise at a trial. The trial judge must also determine that a guilty plea is not the result of force, threats, or promises apart from the plea agreement, i.e., is voluntary.[34]

---

[31] *See generally* Def.'s Presentence Investigation Report ("PSI") § 5, Dr. Walsh's Psychosocial Assessment of Robert Smith (Jul. 5, 2017); *see also* PSI § 5, Dr. Testa's Neurological Consultation (Feb. 25, 2017). Dr. Mechanick did not write a report. *See* D.I. 36 7:14-17.
[32] D.I. 36 at 5:13-9:14.
[33] *Id.* at 3:14-20.
[34] *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997) (citations omitted).

"[A] defendant's statements to the Superior Court during the guilty plea colloquy are presumed to be truthful."[35] "Absent clear and convincing evidence to the contrary, [a defendant] is bound by his statements at the plea colloquy."[36]

Smith's plea was entered knowingly, intelligently, and voluntarily after a thorough colloquy. During Smith's August 30, 2017 Hearing, the Court reviewed the Truth-In-Sentencing Plea form with Smith, confirmed he read and understood the questions posed, and answered all questions truthfully.[37] Smith confirmed he understood the nature of the charges and the penalties provided for each offense; he understood all rights he was waiving by entering his plea; he stated he had not been promised anything not stated in the written plea agreement; he stated he had not been threatened or forced to enter the plea; he was satisfied with his lawyers' representation, and all his answers were truthful.[38]

3.    *Does Smith presently have a basis to assert legal innocence?*

"To assert a basis for legal innocence after entering a guilty plea and admitting guilt at a Hearing, the defendant must point to specific evidence that forms the basis

---

[35] *Id*. at 632.
[36] *Davis v. State*, 1992 WL 401566, at *1 (Del. Dec. 7, 1992) (citing *Bramlett v. Lockhart*, 876 F.2d 644, 647-48 (8th Cir. 1989)).
[37] D.I. 36 at 10:18-11:16.
[38] *Id*. The Court notes that after the August 30, 2017 Hearing, the Court conducted three subsequent evidentiary hearings during Smith's Postconviction proceedings and determined Smith's decision as to whether he should accept or reject the plea was entirely his own. *See Smith*, 2024 WL 1577183 at *3, *7.

9

for assertion of legal innocence."[39]  "A defendant seeking relief based on legal innocence, or 'legal insufficiency,' contends that the prosecutor has failed to produce sufficient evidence at a criminal trial to establish guilt beyond a reasonable doubt."[40]

Smith does not make an assertion of legal innocence in his case.  Rather, he argues that had he gone to trial, he would have raised two defenses: self-defense and extreme emotional distress (EED).[41]  Self-defense is a justification defense, which would result in an acquittal if successful at trial;[42] however, self-defense was not a viable defense in Smith's case.  In Trial Counsel's Affidavit in Response to Smith's Rule 61 Motion, they stated:

> Counsel investigated all plausible defenses including self-defense. Counsel discussed with the Defendant the inherent weakness of proceeding to trial on a theory of self-defense.  Mr. Smith never claimed the victim threatened his well-being immediately prior to her death which would substantiate the justified use of deadly force.  Mr. Smith agreed that leading up to the incident, the victim was merely pushing, spitting and slapping him in the face which would not give rise to the use of deadly force.[43]

Pursuant to 11 *Del. C.* § 464(c), "[t]he use of deadly force is justifiable . . . if the defendant reasonably believes that such force is necessary to protect the defendant against death, serious physical injury, kidnapping or sexual intercourse

---

[39] *State v. Capobianco*, 2014 WL 890946, at *2 (Del. Super. Mar. 5, 2014).
[40] *Carney v. State*, 319 A.3d 842, n.32 (Del. 2024).
[41] Def. Appellant's Am. Opening Br., Trans. ID 73467954 (Jun. 24, 2024) ("Def.'s Opening Br.") at 15; *see also* D.I. 77 at 21:2-23:21.
[42] *See State v. Prince*, 2022 WL 211704, at *6 (Del. Super. Jan. 24, 2022); *see also* 11 *Del. C.* § 464.
[43] Postconviction Hr'g Joint Ex. ("J.E.") at 11.

compelled by force or threat."[44]  Here, Smith cannot point to specific evidence that forms the basis for a credible self-defense claim because the victim allegedly pushing, spitting, and slapping Smith in the face does not justify his use of deadly force.  Accordingly, self-defense is not a basis for legal innocence in this case.

As to Smith's EED defense, EED is not a defense that would have resulted in an acquittal even if it was successful at trial.  Pursuant to 11 *Del. C.* § 641, "[t]he fact that the accused intentionally caused the death of another person under the influence of extreme emotional distress is a mitigating circumstance, reducing the crime of murder in the first degree . . . to the crime of manslaughter . . . ."[45]  A "mitigating circumstance" is not the same as asserting a basis for legal innocence.

### 4. *Did Smith have adequate legal counsel throughout the proceedings?*

Smith's Trial Counsel were inadequate when (and because) they failed to file Smith's motion to withdraw his guilty plea, or withdraw as counsel so Smith could proceed *pro se* with his motion.[46]  "When the defendant is represented by counsel, the authority to manage the day-to-day conduct of the defense rests with the attorney."[47]  However, "certain decisions regarding the exercise or waiver of basic trial and appellate rights are so personal to the defendant that they cannot be made

---

[44] 11 *Del. C.* § 464(c).

[45] 11 *Del. C.* § 641.

[46] The Commissioner and the Court have previously found Smith's Trial Counsel were ineffective for failing to file a motion to withdraw Smith's guilty plea or withdrawing as counsel so Smith could proceed *pro se*. *See generally* D.I. 89; *Smith*, 2024 WL 1577183.

[47] *Cooke v. State*, 977 A.2d 803, 840 (Del. 2009).

11

for the defendant by a surrogate."[48]  The Delaware Supreme Court held in *Reed v. State* that:

> [A] criminal defendant's control of the objective of the representation prior to sentencing requires that counsel either obey an instruction to file a motion to withdraw a guilty plea, or seek leave to withdraw so that the defendant can file a motion with other counsel or *pro se* . . . . Even if counsel believes the defendant's motion is contrary to his interest or is without merit, a defendant's decision to attempt to withdraw a plea prior to sentencing cannot be overruled by counsel.[49]

Smith entered his GBMI plea on August 30, 2017.[50]  On October 9, 2017, Smith wrote a letter to Trial Counsel requesting to withdraw his plea and have a motion filed.[51]  Smith reiterated the same request to Trial Counsel on October 19, 2017 when they had an in-person meeting.[52]  During that discussion, Trial Counsel told Smith that they had no legal basis to withdraw his guilty plea.[53]  They did not file Smith's requested motion to withdraw his guilty plea, nor did they withdraw as counsel so that Smith could proceed with his motion *pro se*.[54]

After meeting with Trial Counsel on October 19, 2021, the issue of Smith's wanting to withdraw his guilty plea did not come up again.[55]  However, at the

---

[48] *Id*. at 841 (citing *Florida v. Nixon*, 543 U.S. 175, 187 (2004)).
[49] *Reed*, 258 A.3d at 829.
[50] D.I. 24.
[51] *See* D.I. 27 (filed Nov. 16, 2017).
[52] D.I. 77 at 29:6-16.
[53] D.I. 74 at 26:1-28:21.
[54] *Id*.; *see also id*. at 71:3-19 (Mr. DelCollo states that neither he nor Mr. Meyers offered to withdraw as Smith's counsel so Smith could go ahead and take his motion "up the mantle.").
[55] *Id*. at 29:2-3.

evidentiary hearing held on September 16, 2021, the following exchange took place between Mr. Gill and Smith:

> **Mr. Gill**: Do you still want to go to trial?
>
> **Smith**: Yes.
>
> **Mr. Gill**: Do you still want to withdraw your plea?
>
> **Smith**: Yes.
>
> **Mr. Gill**: And do you understand what will happen in trial and if you went to trial and were convicted of all the charges, you would end up getting the remainder of your life in prison?
>
> **Smith**: Yes.
>
> **Mr. Gill**: And yet your still wish to have the plea set aside and go to trial; is that correct?
>
> **Smith**: Yes.[56]

The record establishes Smith clearly indicated that he wished to file a motion to withdraw his guilty plea, Trial Counsel did not file a motion to withdraw his guilty plea, and Trial Counsel did not move to withdraw as Smith's counsel.[57]

---

[56] D.I. 77 at 29:17-30:8.

[57] Trial Counsel was inadequate during Smith's plea process because they overruled his decision to attempt to withdraw his plea prior to sentencing, which is an "autonomy interest" reserved specifically for Smith. *See Reed*, 258 A.3d at 822 ("[T]his Court previously has described a criminal defendant's right to decide how to plead to a charge as being an "autonomy interest.") (citing *Taylor*, 213 A.3d at 568).

5. *Does granting the motion prejudice the State or unduly inconvenience the Court?*

Based on the record, there is nothing to suggest that granting Smith's motion to withdraw his guilty plea would have prejudiced the State or unduly inconvenienced the Court.[58] The State concedes that there is no reason to believe that the State could not have proceeded to trial without suffering any extraordinary prejudice had the Superior Court granted the motion to withdraw the guilty plea.[59]

**WHEREFORE**, pursuant to the Delaware Supreme Court's Order on remand, the Court respectfully submits the above as its analysis of the *Scarborough* factors.

**IT IS SO ORDERED.**

/s/ Jan R. Jurden
Jan R. Jurden, President Judge

cc:  Prothonotary
Andrew J. Vella, Esquire
Edward C. Gill, Esquire
Robert L. Smith (SBI #00186178)

---

[58] Def.'s Opening Br. at 15.
[59] *See* State's Answering Br., Trans. ID 73881827 (Aug. 1, 2024) at 22.