IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ROGER BARLOW, | § | |
| | § | No. 240, 2024 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | ID Nos. 2201006578, 2109014511 (K) |
| STATE OF DELAWARE, | § | |
| | § | |
| Appellee. | § | |

Submitted: April 23, 2025
Decided: July 8, 2025

Before **VALIHURA**, **TRAYNOR**, and **LEGROW**, Justices.

## **ORDER**

This 8th day of July, 2025, after consideration of the parties' briefs, the argument of counsel, and the record on appeal, it appears to the Court that:

(1)    A Kent County grand jury indicted Roger Barlow for rape in the first degree, strangulation, and sexual extortion. These charges stemmed from a disturbing incident in which Barlow witnessed his victim shoplifting at a Dover-area bargain-outlet store, followed her as she left the store, grabbed her, and, after telling the victim he was a store employee, demanded that she have sex with him or face arrest for shoplifting. Barlow then "became violent[,] . . . strangled her[,] . . . dragged her behind the store[, and] . . . anally raped her."[1]

_____

[1] App. to Opening Br. at A312.

(2) On the day his trial was set to begin and in accordance with the terms of a written plea agreement, Barlow pleaded guilty to rape in the second degree, which is a lesser-included offense of the indicted charge of rape in the first degree. In exchange for Barlow's guilty plea, the State dismissed the strangulation and sexual-extortion charges and an unrelated charge of unlawful sexual contact in the second degree. The State also agreed to cap its sentencing recommendation to 50 years of unsuspended prison time.

(3) In the Truth-in-Sentencing ("T.I.S.") Guilty Plea Form signed by Barlow and his lawyer, Barlow acknowledged, among other things, that: he was not under the influence of alcohol or drugs when he agreed to enter his guilty plea; he had not been promised anything that was not stated in his plea agreement; he had not been threatened or forced to enter the plea; he understood the full panoply of constitutional rights he was giving up as a consequence of his guilty plea; and he was subject to a minimum mandatory penalty of 25 years in prison. The form listed the range of the incarcerative sentence Barlow faced as "25 yr–Life" and conspicuously noted his habitual-offender status in two places.

(4) Before accepting Barlow's plea, the Superior Court engaged in a colloquy with him for the purpose of determining whether Barlow was knowingly and voluntarily entering the plea because he was, in fact, guilty of second-degree rape. While under oath, Barlow assured the court that he understood the elements

of second-degree rape and "the evidence in [his] case leading to that charge,"[2] and he admitted that he was guilty of the charge. In addition to that, Barlow acknowledged that he understood that, by virtue of his plea, he would give up his right to a speedy trial with the assistance of counsel and any rights to the suppression of evidence he might have. Barlow further confirmed that he understood that his sentence would fall within a range of 25 years to life in prison. Barlow also acknowledged that the court was not bound to follow the State's sentencing recommendation. And when the court questioned him about the T.I.S. Guilty Plea Form described above, Barlow stated under oath that he understood the questions on the form—questions that ask in specific terms whether the pleading defendant grasps the significance of his plea—and provided truthful answers to those questions. For good measure, the trial judge asked Barlow if he understood that, if he entered the guilty plea and the plea was accepted, it would be "almost impossible for [him] to back out of it."[3] Satisfied that Barlow's guilty plea was "knowingly and voluntarily made with an understanding of the nature of the charge and the consequence of the plea,"[4] the court accepted Barlow's plea.

(5) As mentioned, under the plea agreement, Barlow agreed that he was a habitual offender and therefore subject to sentencing under 11 *Del. C.* § 4214(c).

---

[2] *Id.* at A47–48.
[3] *Id.* at A51.
[4] *Id.* at A53.

Barlow acknowledged that his habitual offender status, which exposed him to a sentence of incarceration for 25 years to life, was based on the following prior convictions: trafficking in cocaine (May 11, 2007); escape after conviction (May 11, 2007); possession with intent to deliver (March 28, 2003); conspiracy in the second degree (March 28, 2003); aggravated menacing (August 22, 2001); aggravated menacing (June 14, 2000); robbery in the second degree (March 26, 1997); and receiving stolen property (March 26, 1998).

(6) During the plea proceedings, Barlow's counsel confirmed on the record and in Barlow's presence that Barlow was subject to sentencing as a habitual offender and thus faced a minimum mandatory sentence of 25 years in prison and that the State had agreed to cap its sentencing recommendation to 50 years. Upon questioning by the judge during the plea colloquy, Barlow said that he had heard everything that his counsel had said on his behalf and that it was accurate.

(7) Despite this record, when the State later filed the statutorily required motion asking the court to declare Barlow a habitual offender and to sentence him as such under § 4214(c), Barlow opposed the motion. He claimed that the State's motion was untimely and that the evidence produced by the State establishing his criminal history and that he had been previously declared a habitual offender was inadequate.

4

(8)     The State responded to Barlow's opposition, noting that Barlow had "admitted to being a habitual offender and expressly waived any right to challenge this designation[.]"[5] The State argued further that, by opposing the habitual-offender declaration, Barlow had breached a material condition of his plea agreement. Because of this breach, the State asked the court to determine that the State was no longer bound by the previously agreed-upon 50-year cap on its sentencing recommendation.

(9)     Barlow's opposition to the State's habitual-offender motion was short-lived. Three weeks after the State filed its response, for reasons unrelated to this case, this Court suspended Barlow's counsel from the practice of law for two years.[6] Not long after that, the Superior Court appointed new counsel to represent Barlow. New counsel promptly informed the court that Barlow no longer opposed the State's habitual-offender motion, but instead intended to move to withdraw his guilty plea. In due course, Barlow filed his Motion to Withdraw Guilty Plea, which is the subject of this appeal.

(10)   In his motion, Barlow claimed that, despite his answers to the questions on the T.I.S. Guilty Plea Form and during the colloquy with the trial judge, he did not knowingly and voluntarily consent to the plea agreement. His lawyer during the

---

[5] *Id.* at A133.
[6] *See In re Matter of a Member of the Bar of the Sup. Ct. of Del., Andre M. Beauregard*, 291 A.3d 192 (Del. 2023).

plea proceeding, so Barlow contended, advised him—in stark contrast with what both Barlow and his lawyer represented in open court and in the written plea agreement—that in fact he was *not* a habitual offender and that he—the lawyer—"could prove that in court."[7] Barlow argued that his lawyer's eventual filing of an opposition to the State's habitual-offender motion validated his account of the advice his lawyer gave him before he entered his guilty plea. Grounding his motion in part on a claim that his plea was the product of ineffective assistance of counsel, Barlow conceded that there was no basis for counsel's purported advice.[8]

(11) The Superior Court denied Barlow's motion, weighing the five *Scarborough*[9] factors—discussed below—and finding that none of them weighed in Barlow's favor. The court eventually sentenced Barlow as a habitual offender to 75 years of Level V incarceration, suspended after 50 years, followed by decreasing levels of probation and Barlow appealed.

(12) The decision whether to grant a defendant's motion to withdraw a guilty plea lies within the sound discretion of the trial court and will be reviewed on appeal only for abuse of discretion.[10] Likewise, we review the Superior Court's decision

---

[7] App. to Opening Br. at A146.
[8] Barlow's Motion to Withdraw Guilty Plea included an ineffective-assistance-of-counsel claim based on Barlow's counsel's failure to review discovery materials and evidence with Barlow, but he has not pressed that claim on appeal. *Id.* at A148.
[9] *Scarborough v. State*, 938 A.2d 644, 649 (Del. 2007).
[10] *Wells v. State*, 396 A.2d 161, 162 (Del. 1978). *See also State v. Insley*, 141 A.2d 619, 622 (Del. 1958); *Perez v. State*, 224 A.3d 201, 2019 WL 6954098, at *2 (Del. Dec. 18, 2019) (TABLE).

whether to hold an evidentiary hearing on a motion to withdraw a guilty plea for abuse of discretion.[11]

(13)    Under Superior Court Criminal Rule 32(d), "the court may permit withdrawal of a plea [before sentencing] upon a showing by the defendant of any fair and just reason."

(14)    Under our decision in the previously mentioned *Scarborough* case, a trial judge considering a defendant's motion to withdraw his guilty plea must address five questions:

> (1)    Was there a procedural defect in taking the plea;
>
> (2)    Did the defendant knowingly and voluntarily consent to the plea agreement;
>
> (3)    Does the defendant presently have a basis to assert legal innocence;
>
> (4)    Did the defendant have adequate legal counsel throughout the proceedings; and,
>
> (5)    Does granting the motion prejudice the State or unduly inconvenience the Court?
>
> These factors are not factors to be balanced; indeed, some of the factors of themselves may justify relief.[12]

---

[11] *See Raison v. State*, 469 A.2d 424, 426 (Del. 1983) (finding that the Superior Court did not abuse its discretion in denying the defendant's motion to withdraw his guilty plea without first holding an evidentiary hearing).

[12] *Scarborough*, 938 A.2d at 649 (citation modified).  Although these factors are now routinely referred to as "the *Scarborough* factors," the *Scarborough* court actually derived them from *Patterson v. State*, 684 A.2d 1234, 1238 (Del. 1996), which adopted the framework from an earlier Superior Court decision.  *See State v. Friend*, 1994 WL 234120, at *1–2 (Del. Super. Ct. May 12, 1994), *aff'd*, 683 A.2d 59, 1996 WL 526005 (Del. Aug. 16, 1996) (TABLE).

(15)  On appeal, Barlow focuses on the inadequacy of his counsel and his claim that he has a basis to assert legal innocence.

(16)  The Superior Court rejected Barlow's ineffective-assistance-of-counsel claim, finding unpersuasive Barlow's assertion that his counsel advised him that he could avoid a habitual-offender declaration despite the clear admissions that he was a habitual offender and would be sentenced as such.  The court lent little credence to Barlow's argument that, because his lawyer had made misrepresentations to the Superior Court in another case—misconduct that led to the lawyer's suspension from the practice of law—the court should accept his version of what the lawyer told him to induce him to enter his plea.  Barlow now argues that the court erroneously "presumed that former counsel would not represent to the Court that . . . Barlow was a[] habitual offender, yet tell . . . Barlow that he was not."[13]  According to Barlow, "such presumption was an abuse of discretion especially when former counsel did not testify at an evidentiary hearing or provide an affidavit in response to Mr. Barlow's claims of ineffectiveness in his Motion to Withdraw Guilty Plea."[14]  We disagree.

(17)  For starters, it was Barlow's burden to establish a fair and just reason for allowing him to withdraw his plea.  We have described that burden as

---

[13] Opening Br. at 22.
[14] *Id.*

8

"substantial."[15] Here, Barlow's effort to establish a fair and just reason is predicated on his improbable assertion that he and his lawyer, as they prepared to enter his plea, agreed on a course of action that would effectively pull the wool over the Superior Court's and the State's eyes by stipulating that Barlow was a habitual offender, intending all the while to controvert that stipulation when the time was ripe. In choosing not to credit this assertion the Superior Court indulged the presumption that, "[i]n the absence of clear and convincing evidence to the contrary, [the appellant] is bound by his answers in the Truth-in-Sentencing Guilty Plea Form and by his sworn testimony [before the court's] acceptance of the guilty plea."[16] The thrust of the court's ruling was that the factual predicate of the motion, when stacked up against the plea-colloquy record and the T.I.S. Guilty Plea Form, was facially implausible and that an evidentiary hearing would be superfluous. Although this Court has observed that, when a defendant seeks to withdraw a guilty plea, the trial court should ordinarily hold an evidentiary hearing,[17] under the facts of this case, we cannot conclude that this ruling was an abuse of discretion.[18]

---

[15] *Reed v. State*, 258 A.3d 807, 823 (Del. 2021).

[16] *Schofield v. State*, 314 A.3d 1077, 2024 WL 1209528, at *1 n.1 (Del. Mar. 20, 2024) (TABLE) (quoting *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997)) (brackets in original).

[17] *Raison*, 469 A.2d at 426.

[18] We are not persuaded that our decision in *Kinderman v. State*, 302 A.3d 407 (Del. 2023), mandates a different result. In *Kinderman*, the appellant had moved to withdraw his guilty plea, claiming that his counsel had not fully explained the essential terms of his plea agreement and had failed to conduct a mitigation investigation. The Superior Court denied Kinderman's motion. On appeal, in assessing the reasonableness of counsel's conduct, we did not rely exclusively upon

(18) As mentioned earlier, Barlow also argues that the Superior Court's failure to conclude that he had a basis to assert legal innocence—the third *Scarborough* factor—was an abuse of discretion. Our review of the record leads us to conclude otherwise.

(19) Barlow's assertion of innocence below essentially invited the Superior Court to accept his version of the relevant events to the exclusion of the victim's version. Given the record before it, it was not unreasonable for the court to decline Barlow's invitation. In addition to the facts recited in Paragraph (1) above, the Superior Court considered that:

> (i) after the rape, the victim observed Barlow returning to the store, a fact that was corroborated by the store personnel;
>
> (ii) the victim's fiancé, who fled the scene before the rape, confirmed that an unknown male attempted to stop him and the victim after they left the store;
>
> (iii) according to store employees, after seeing the victim and her fiancé leave the store without paying for merchandise, Barlow told the employees that he would stop the shoplifters and then chased after them;
>
> (iv) Barlow returned to the store where he reported that one of the shoplifters had bitten his hand and showed them the site of the bite;
>
> (v) the following day, the victim reported the rape to law enforcement and underwent an examination by a Sexual Assault Nurse Examiner ("SANE");
>
> (vi) multiple swabs were collected during the SANE examination for DNA testing; and

---

Kinderman's statements during his plea colloquy but also considered counsel's evidentiary-hearing testimony. We reject the notion, implicit in Barlow's repeated invocation of *Kinderman*, that the trial court's exercise of discretion to hold an evidentiary hearing, and our reliance on it, in *Kinderman* has established a bright-line rule requiring an evidentiary hearing whenever a movant alleges facts that are contrary to those to which he has previously sworn.

10

(vii) DNA analysis later determined that the male DNA on the swabs from the victim's rectum, which included sperm, was Barlow's.

(20) Against this evidence, the court considered that Barlow initially told police that:

(i) he was not in Delaware during the month of the alleged rape;

(ii) he did not know where the outlet store was located, despite living near the store and appearing in the surveillance video from the store on the day of the rape;

(iii) he had never met the victim or her fiancé; and

(iv) when confronted with the DNA report linking his sperm and DNA to swabs taken from the victim's rectum, he responded "that's impossible."[19]

(21) Barlow later revised his story to reconcile it with the evidence that otherwise pointed toward his guilt. Well after he pleaded guilty and then moved to withdraw his plea, Barlow told the presentence investigator that he had actually known the victim since 2001 and would often provide drugs to her in exchange for sex. Barlow also told the investigator that he was acting in concert with the victim and her fiancé in the shoplifting operation—he was the "lookout"—and that he helped them transport the stolen goods by car to an apartment, had consensual sex with the victim who got mad because he did not give her enough drugs, then drove back to the store.[20] It is this version of events upon which Barlow told the trial court that he had a basis to assert legal innocence.

---

[19] App. to Opening Br. at A268.

[20] According to the prosecution, the store's surveillance video established that Barlow returned to the store 13 minutes after he departed in pursuit of the shoplifters. *See id.* at A314–15.

11

(22) The Superior Court was understandably incredulous, choosing to afford more weight to Barlow's sworn statement during the plea proceedings that he was, in fact, guilty of rape in the second degree than to his newly minted account of the relevant events. It is questionable, in our view, that a defendant's belated profession of innocence that amounts to nothing more than a denial of the allegations in an indictment—a denial that contradicts the defendant's prior versions of the relevant events, the victim's version of those events, and the physical evidence—provides "a basis to assert legal innocence" within the meaning of *Scarborough*. But even if it does, it was well within the trial court's discretion to give it little to no weight as it considered the *Scarborough* factors. In effect, that is what the Superior Court did in this case.

(23) In sum, we conclude that the Superior Court did not abuse its discretion when it denied Barlow's motion to withdraw his guilty plea.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

12